## WILLIAM E. FALK

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. VERDICT *against the evidence — when set aside.* The rule that an appellate court will not interfere to set aside a verdict, unless it is palpably against the evidence, obtains in the largest sense in civil cases, but it is not applied to the same extent in criminal cases, especially where life is at stake.

2. Hence, in a capital case, when this court, on considering the whole record, shall be satisfied justice has not been done, the case will be sent to

another jury; and it need not appear that the first jury acted rashly, by deciding against the evidence.

3. THE JURY — *their responsibility in criminal cases.* While it is true in the fullest sense, that a jury in a criminal case are judges both of the fact and of the law, and may be so instructed by the court, they should then be left to their own responsibility alone, to decide on the guilt or innocence of the prisoner, giving to him the benefit of all reasonable doubts, without any reference to the possible future action of the court.

4. Hence, an instruction which correctly states the right of the jury to judge of the law and the fact, and then concludes with the statement, that, "if they disregard the instructions of the court, and mistake the law to the prejudice of the prisoner, it would be the duty of the court to set aside the verdict," is erroneous.

5. The right of the jury to disregard the instructions of the court, as stated in *Schnier* v. *The People*, 23 Ill. 17, is again affirmed as the law, and in the language of that case.

6. EXCEPTIONS — *whether essential in a capital case.* In a capital case, where the instructions given by the court below do not announce correct legal principles, or, being correct, are inapplicable to the case, though no exceptions are taken to them, the appellate court, in the face of the record, will not pronounce sentence of death upon the prisoner, but will award a new trial.

WRIT OF ERROR to the Circuit Court of Hardin county; the Hon. WESLEY SLOAN, Judge, presiding.

This was an indictment against William E. Falk, charging him with the murder of John C. Worthington, in August, 1866. It was returned to the Circuit Court of Hardin county, during that same month. The facts of the case sufficiently appear in the opinion of the court.

Mr. M. C. CRAWFORD, for the plaintiff in error.

Mr. T. S. CASEY, State's attorney, for the people.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an indictment in the Circuit Court of Hardin county, against the plaintiff in error for murder. The jury found the prisoner guilty, and sentence of death was passed upon him, and a short day fixed for his execution.

To reverse this judgment, this writ of error is prosecuted, and various errors are assigned.

The record is voluminous, and all the evidence preserved in the bill of exceptions which was tendered and signed in proper time on exceptions taken on the trial, and in overruling a motion for a new trial.

There was but one witness called and examined as to the charge in the indictment, and that was one Fortner, who, from his own statement, was *particeps criminis.* He, with the prisoner and one Thomas, called "blind Tom," were the parties, if the witness is to be believed, who committed the deed, and under circumstances of great atrocity.

We have examined the testimony with great care, and have come to the conclusion, reluctant as we always are to disturb the verdict of a jury, that this case ought to go to another jury.

The rule, that an appellate court will not interfere to set aside a verdict, unless it is palpably against the evidence, obtains in the largest sense in civil cases, but well considered cases are to be found in books of authority, where it is not applied to the same extent in criminal cases, and especially in cases where life is at stake. Among other cases which might be cited, going to show that the strong language of the rule in civil cases is not applied in criminal cases, is that of *Dains* v. *The State,* 2 Humphreys 442. That was a case for an assault with intent to murder, and a verdict of guilty. On error to the Supreme Court, it was held, that the rule that the court will not grant a new trial upon the facts, unless the jury shall appear to have been guilty of great rashness, did not apply to criminal cases. In such cases, new trials have been constantly granted by this court, upon its conviction that the verdicts were not warranted by the proof.

That court, not believing from the facts in the record, that the prisoner struck the blow with premeditation and deliberation, though the jury found he had so struck it, the judgment was reversed and a new trial awarded.

Without adopting this as a rule of this court, we have no hesitation in saying, that in a capital case, when this court, on considering the whole record, shall be satisfied justice has not been done, though it should not appear the jury had acted

rashly by deciding against the evidence, it would be the duty of this court to send the cause to another jury. In such case we could not be satisfied to pass the dread sentence of death upon a prisoner without a further investigation, and especially in a case when the only witness stands as an accomplice in the deed, his character for truth, if not impeached, much shaken by the testimony of most respectable men, and the accused proved to have always sustained a good character. It is, however, urged by the counsel for the prosecution, that the witness was corroborated by circumstances attending the transaction detailed by other witnesses. These were the admissions of the prisoner that he crossed the river on the evening of the alleged murder, in company with " blind Tom," and the witness Fortner, and rowed down in a skiff to Carrsville, in Kentucky. This circumstance is not inconsistent with the innocence of the prisoner, and his making a voluntary statement of these facts should not go entirely to his prejudice.

Not designing, for the reason given, to argue the evidence, we will state, that one of the grounds for the interference of this court may be found in one of the instructions given to the jury, which, though perhaps correct in principle, was calculated to relieve the jury of that responsibility which wholly rests upon them in cases of this nature.

The jury were told they were the judges of the law and the testimony, and had a right to disregard the instructions of the court, *but*, if they should disregard the instructions of the court, and mistake the law to the prejudice of the prisoner, it would be the duty of the court to set aside the verdict.

Is not this saying, substantially, to the jury, that it is not a matter of much importance how you may determine the law, as the court stands ready to set it right, if your finding is to the prejudice of the prisoner? Is it not, in substance, an offer on the part of the court to share the responsibility with the jury, and is it always certain, that a court will set aside a verdict, because the jury have erroneously decided the law to the prejudice of a prisoner? And does it not deprive the prisoner of all benefit of such reasonable doubts as the jury may enter-

tain of his guilt? Might not a majority of the jury control the verdict by this argument to the minority, that, if you have reasonable doubts, a verdict against the prisoner cannot affect him, as the court will set it aside if it is wrong?

We think the jury should have been left to their own responsibility alone, to decide on the guilt or innocence of the prisoner, giving to him the benefit of all reasonable doubts, without any reference to the possible future action of the court. Since the statute makes the jury the judges of the law and the fact, they must discharge themselves of this responsibility on due deliberation, and as though their decision was final.

The rule on this point is fully stated in *Schnier* v. *The People*, 23 Ill. 17. It is there said, "if the jury can say upon their oaths that they know the law better than the court does, they have a right to do so, but, before assuming a responsibility so solemn, they should be sure that they are not acting from caprice or prejudice,—that they are not controlled by their will or wishes, but by a deep and confident conviction that the court is wrong and they are right. Before saying this upon their oaths, it is their duty to reflect, whether, from their habit of thought, their study and experience, they are better qualified to judge of the law than the court. If, under all these circumstances, they are prepared to say the court is wrong in its exposition of the law, the statute has given them that right."

It is true, there was no exception to this instruction, but the court on its own motion might, with great propriety, have so modified it as to have informed the jury of their responsibility, and that it lay on them so to deal with the prisoner, as though no power existed beyond them to change their verdict. Looking at this instruction in connection with the whole record, we cannot but think it must have had an influence on the jury to the prejudice of the prisoner, and we are fully impressed with the conviction that the criminal justice of the country would be best promoted by requiring another jury to pass on the case.

Suppose all the instructions given by the court to a jury in a capital case are wrong,—that they do not announce correct legal principles, or being correct, are inapplicable to the case,

and no exceptions are taken to them, — would it be the duty of an appellate court, under such circumstances, when the record shows a prisoner has been illegally condemned by misapplication of the law to his case, and he asks a review of the proceedings, that such court, in the face of the record, should pronounce the sentence of death upon him ? An appellate court would pause, when called on, under such circumstances, to pronounce the sentence, — to consign to the gallows a human being, the record of whose trial fails to satisfy that court that justice under the law has been meted out to the prisoner.

For the reasons given, the judgment of the Circuit Court is reversed and the cause remanded for a new trial.

*Judgment reversed.*