(No. 32366.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LYLE BENNETT, Plaintiff in Error.

*Opinion filed January 22, 1953.*

BERNARD G. MAXWELL, of Canton, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and ROGER W. HAYES, State's Attorney, of Macomb, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Lyle Bennett, defendant below, was, in the circuit court of McDonough County, indicted, tried and found guilty of the crimes of burglary and larceny. He now prosecutes this writ of error.

At the trial of this cause it was shown that in March of 1951 one Glen Adkisson owned and operated a food store in the city of Macomb, known as the Nation Wide Market. On March 19, 1951, at about 8:00 P.M., he securely locked the premises and departed. The next morning, March 20, 1951, at about 8:15 A.M., he received a call from his employee, Bill Castleburg, informing him that someone had broken into the store. Upon arriving at his place of business he found the back doors broken open and about two hundred pounds of coffee, most of the meat from the cooler and show case, and a meat grinder missing.

Defendant and one Everett Kirkpatrick were arrested on March 23, 1951, and charged with burglary and larceny of the store. Each was later separately indicted for burglary and larceny. Lyle Bennett was brought to trial by jury prior to Everett Kirkpatrick. His motion for a directed verdict at the close of all the evidence was denied, and the jury returned a verdict finding him guilty of "the crime of Burglary and Larceny in the manner and form as charged in the indictment herein." The court then denied defendant's motions for new trial and in arrest of judg-

ment, and adjudged him guilty. He was then sentenced and committed to the Illinois State Penitentiary system generally, .for not less than one year nor more than life. On hearing, the minimum time to be served was fixed at twelve years and the maximum at twenty years.

During the course of the proceedings Everett Kirkpatrick was subpoenaed as a witness in this cause. He thereupon filed a petition in which he requested permission to intervene for the purpose of objecting to his being called as a witness, for the reason that such appearance and examination would tend to incriminate him in violation of section 10 of article II of the constitution of the State of Illinois. The court permitted Kirkpatrick to so intervene, but thereafter, on motion of the State's Attorney, he was called as a witness. The People, over defendant's objection, were allowed to prove that Kirkpatrick was under indictment in McDonough County for burglary and larceny. The State's Attorney repeatedly questioned him concerning the details of the alleged crime, and he was compelled, in the presence of the jury, again and again to rely on his constitutional privilege and refuse to answer the questions.

The practice of the court's calling a witness at the request of the prosecution in a criminal case has been recognized where the person called is an eyewitness to the crime and the State's Attorney doubts the veracity and integrity of such witness. (*Carle* v. *People,* 200 Ill. 494.) This practice, however, has been restricted to cases where it is shown that otherwise there might be a miscarriage of justice. *People* v. *Laster,* 413 Ill. 224; *People* v. *Johnson,* 333 Ill. 469.

In making his request of the court, the State's Attorney set forth as his reason for so calling Kirkpatrick that there was every reason to believe that he was present at the transaction and that he had refused to talk to the State's Attorney about his answers to certain questions. That is hardly enough to warrant the court's action. It was in-

cumbent on the People to show that without his testimony a miscarriage of justice was likely to result. Especially is this true where the witness is under indictment for the same crime for which the defendant is being tried. (*People* v. *Cardinelli,* 297 Ill. 116.) Not only did the State's Attorney fail to make a proper showing, but by his questions before the jury compelling the witness to claim his constitutional privilege, he was able to suggest by implication, innuendo and insinuation that Kirkpatrick and defendant had committed the crime for which defendant was on trial. While the examination added little material evidence to the trial, it was certainly well calculated to prejudice the defendant in the eyes of the jury. Moreover, nothing was shown thereby without which a miscarriage of justice would have resulted. In light of the lack of a proper showing by the State's Attorney in making his request and the resulting prejudicial effect, it was error for the court to call Kirkpatrick as its own witness and allow a cross-examination by the People.

During the cross-examination of the defendant by the State's Attorney, inquiry was made as to whether he had been arrested in Quincy since March 19, 1951. Objection to the question was overruled and defendant was required to answer. Upon his answering in the affirmative, this line of questioning was further pursued by the prosecution, to which objection was sustained though defendant failed to move that the answers be stricken. It became obvious that the question relative to defendant's being arrested in Quincy had no relation to the crime for which he was then on trial. Its only purpose was to convey to the jury the information that defendant had been arrested on another charge. It is fundamental that mere proof that a party has suffered arrest cannot be used against him in a criminal case. The rule is different, however, where the defendant has previously been convicted of a felony, but even then only the record of the conviction or a certified

copy thereof may be introduced as proof. (*People* v. *Herbert*, 361 Ill. 64; *People* v. *Garippo*, 321 Ill. 157; *People* v. *Schultz-Knighten*, 277 Ill. 238.) Evidence of such arrest could not but prejudice the defendant before the jury. A defendant has a right to be tried by the law of the land, and a conviction secured through the use of improper questions designed to prejudice the jury in disregard of that law cannot be condoned. (*People* v. *Page*, 365 Ill. 524; *People* v. *Garines*, 314 Ill. 413.) The admission of the evidence was error.

It is undisputed that in the early morning of March 20, 1951, between 2:30 and 3:00 A.M., the defendant and Kirkpatrick appeared at the kitchen door of the Rainbow Gardens, a restaurant and tavern near Canton, Illinois. Paul C. Cardosi, the operator, was there alone preparing to close for the night. He let defendant and Kirkpatrick in and subsequently entered into a transaction wherein he purchased some merchandise they had with them. The purchase was of 150 to 160 cans of coffee, some meat, and a meat grinder.

From the witness stand, Cardosi identified a statement as one made and signed by him in Springfield on March 26, 1951, in the presence of Roger Hayes, State's Attorney of McDonough County, John B. Anderson, Sheriff of Fulton County, and John Bliven, deputy sheriff of McDonough County. In this statement Cardosi related how defendant and Kirkpatrick came to his place of business in the early morning of March 20, 1951. He said they invited him out to the garage where they showed him the merchandise. Upon entering the tavern, defendant offered to sell everything to him. The prices he alleged defendant quoted were fifty cents per pound for the coffee, thirty cents per pound for the meat, and one hundred dollars for the grinder. Cardosi replied, "Lyle, I can't give you that kind of money for the grinder, I've got to hide it and I haven't the money to spare to tie up," to which he alleged

defendant replied, "Give us seventy five and we will get out of here." After Cardosi completed the statement it is shown that it was taken into a room where Lyle Bennett was confined, he not having been present at its taking. In the presence of Cardosi, John Anderson, and John Blivens, the State's Attorney read the statement to the defendant. Cardosi, Anderson, and Blivens all testified that defendant made no reply to the reading of this statement. At no time was the statement placed in defendant's hands. It was admitted into evidence, over defendant's objection, as People's exhibit 3.

The law is well settled that statements or declarations of a party or witness in corroboration of his theory of the case, whether oral or written, are as a general rule inadmissible in evidence except where they are part of the *res gestae* or made in the presence of the defendant. (*People* v. *Foster,* 288 Ill. 371.) This statement was no part of the *res gestae* and was made out of the presence of the defendant. It is, as to this defendant, pure hearsay.

However, the People in this case contend that exhibit 3 is admissible because, when it was read aloud to the defendant, he made no denial, but remained silent. By this conduct it is asserted that he ratified and adopted the statement as his own, and that the same constitutes an implied admission of his guilt.

This court has had occasion in other cases before this court to give expression to the rules governing implied admissions. In *People* v. *Nitti,* 312 Ill. 73, it is stated that one of the underlying principles upon which statements made in the presence of the accused are admitted in evidence against him is that his silence, when he might and naturally would deny the accusations of guilt if they were not true, is regarded as an acquiescence in their truth and an implied admission of guilt. Another underlying principle governing the admission of such statements is that if charges are made against an accused person in his presence

under circumstances such that he is in no position to deny them, or if his silence is of such a character that it does not justify the inference that he should have spoken, his standing mute does not amount to an admission of the charges against him. (*People* v. *Kozlowski,* 368 Ill. 124; *People* v. *Hodson,* 406 Ill. 328.) Therefore, in order to determine whether the Cardosi statement is admissible, it is necessary to review the circumstances under which it was made, as shown by the evidence.

The defendant, Bennett, had been arrested on Friday and placed in the county jail. Apparently, he remained there until the next Monday, at which time he was taken to Springfield for some reason not disclosed by the record, nor does the record disclose exactly where he was taken in Springfield. While there, exhibit 3, which had been prepared and signed by the witness Cardosi, was taken into the room occupied by the defendant and read aloud in his presence by the State's Attorney. Present at such occurrence was the State's Attorney, John Anderson, the sheriff of Fulton County, John Blivens, a deputy sheriff of McDonough County, and Paul Cardosi. After the same was read, Cardosi was asked if it was his true statement and he replied that it was. Nothing further was said and the witnesses left the room. John Blivens, John Anderson, and the witness Cardosi testified substantially the same in relation to the above facts.

The defendant testified in his own behalf. He admits that the statement was read to him. He also testified that on the Saturday before the Monday in question he had been questioned by the State's Attorney in the presence of the sheriff of McDonough County and while he was in the county jail. He states that in that conversation he requested that a lawyer be notified of his desire to see him and that he then stated to the State's Attorney that he was not in Macomb at the time of the robbery. Lloyd E. Smith, the sheriff, admits that the defendant's counsel had asked

him as to the whereabouts of the defendant and that he replied he did not know, although he does not believe it was on the same day that the defendant was at the county jail. There is no specific statement by any of the witnesses that the defendant did not deny that he was in Macomb on the night of the alleged burglary. Defendant also states that on Monday, the same day he was taken to Springfield, he told the State's Attorney he was not in Macomb at the time of the alleged burglary. If this testimony of the defendant is true, it is difficult to say that his failure to answer when the statement was read to him was an implied admission. It may well be that having denied his guilt on the previous occasion by stating he was not in Macomb, the scene of the crime, he thought it useless to continue to do so. Furthermore, surrounded as the defendant was by officers of law and the State's Attorney who, on the Saturday before, had accused him of the crime, it does not seem that under such condition an admission may be implied from the silence of this defendant. Over defendant's objection this statement was admitted generally by the court. The record does not disclose the giving of any instruction to apprise the jury of the limited purpose for which this statement might be admissible. In *People* v. *Nitti* this court there said that in that case no instructions were given to the jury as to the value of the circumstance of silence, nor as to how such evidence is to be considered and what value might be given it. The same is true in this case. Where there is a great probability that the accused has been illegally condemned by the jury because it has misapplied the law in weighing certain evidence, the court will direct the case to be submitted to another jury. (*Falk* v. *People*, 42 Ill. 331.) We, therefore, believe that, in the state of the record in this case, said statement was improperly admitted in evidence, and it was error to admit it.

Each of the foregoing errors was additionally prejudicial to defendant, depriving him of his right to a fair

trial by an impartial jury. It was the duty of the State's Attorney to see that the defendant had a fair trial, and to that end it was incumbent on him to produce only competent evidence during the trial. (*People* v. *Stanko*, 402 Ill. 558; *People* v. *Black*, 367 Ill. 209.) This duty was not properly fulfilled. Whether each individual error here recited would itself be sufficient ground for reversal we need not determine, as there can be no doubt that collectively they produce such prejudice and error as to make it incumbent upon this court to reverse the judgment.

Numerous other assignments of error are presented by the defendant. Inasmuch as a reversal is ordered for the above errors, it is unnecessary for the court to discuss the other assignments. Accordingly, the judgment and sentence of the circuit court of McDonough County is reversed, and the cause remanded for new trial.

*Reversed and remanded.*