(No. 32995.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH SICILIANO, Plaintiff in Error.

*Opinion filed Sept. 23, 1954—Refiled after rehearing Jan. 21, 1955.*

582

CHARLES A. BELLOWS, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and ROBERT C. NELSON, State's Attorney, of Waukegan, (FRED G. LEACH, and SIDNEY H. BLOCK, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

Plaintiff in error, Joseph Siciliano, was charged with

the crime of bribery in two separate indictments returned by the grand jury of Lake County. By agreement the causes were consolidated and tried together. A jury in the circuit court of Lake County found the plaintiff in error guilty of bribery in manner and form as charged in both indictments, his motions for a new trial, in arrest of judgment, and for release upon probation were denied, and the court sentenced the defendant to imprisonment in the Illinois State Penitentiary for a term of not less than two years nor more than five years in each case, the sentences to run concurrently. Several assignments of error are presented for consideration here, including the contention that the evidence does not sustain the convictions and that the People failed to prove the defendant guilty of the crimes charged beyond a reasonable doubt. Attention will first be given to that phase of the case.

The first indictment charged that plaintiff in error gave one Harold Evans, an inspector of the Division of Foods and Dairies of the Department of Agriculture of the State of Illinois, the sum of $25 on January 5, 1951, to induce Evans, a public officer, to fail to perform his sworn duty in connection with the inspection of certain meat products, to allow and permit the illegal sale of meat products, to-wit, adulterated beef to be sold and dispensed as beef, and to keep and protect plaintiff in error from arrest and punishment for the unlawful sale of adulterated beef. The second indictment charged that plaintiff in error gave Evans $25 on February 15, 1951, to induce Evans to fail to perform his sworn duty in connection with the inspection of horsemeat to be sold as beef, and to keep and protect plaintiff in error from arrest and punishment for the unlawful sale of horsemeat falsely represented as beef.

The principal proof to sustain these charges was the testimony of Harold Evans, a reluctant witness, who testified only after he had claimed his privilege against self incrimination and had been granted immunity by the court

under section 35 of division I of the Criminal Code. (Ill. Rev. Stat. 1953, chap. 38, par. 82.) The testimony of Evans was not contradicted by the defendant, who elected not to take the stand. Evans testified that during the period from late 1949 to January of 1952 he was employed by the Division of Foods and Dairies of the Department of Agriculture of the State of Illinois as an inspector. As such inspector it was his duty to inspect any premises where food was produced or sold in the counties of McHenry and Lake. In connection with the performance of his duties he was not only supposed to examine the establishments for cleanliness. but was required to pick up samples of the products involved for inspection and send them to the Chicago office of the Department for analysis. In late 1949 it appears that one Warren Knorr operated a meat packing and processing plant near Lake Zurich in Lake County known as the Central Market and Provision Company. Evans had inspected this plant in 1949. In December of 1949 Evans and Knorr were together in a tavern in Lake Zurich when plaintiff in error came there and advised Evans that he proposed to go into the horsemeat business in the plant theretofore operated by Knorr. Evans said plaintiff in error then stated that it could be a big operation; that witness would be paid well for what he did and that he asked Evans to "go along with him." On this occasion Evans says that Siciliano slipped a $20 bill into his package of cigarettes, which Evans kept, although he told plaintiff in error he was not interested.

It further appears from Evans's testimony that thereafter Siciliano and others did operate the meat processing plant near Lake Zurich under the name of Lake County Packing Company. Plaintiff in error and Evans had several meetings, on which occasions it appears that Evans was sought out by plaintiff in error. In explaining to Evans what he contemplated doing, plaintiff in error told him that they could use horsemeat blended with beef, cod

fat, etc., to make ground hamburger. Evans testified that he met plaintiff in error in a restaurant in Wauconda on January 5, 1951, at which time John King and Tony Rossi, associates of Siciliano, were present; that on this occasion there was further conversation about the business and that plaintiff in error gave Evans $25. Further testimony relates a meeting in the same restaurant in mid-February of 1951, at which time plaintiff in error again talked about his business and gave Evans $20 or $25. Only Evans and Siciliano were present. Evans detailed other meetings and conversations which indicate more or less continuous contact between him and plaintiff in error.

Evans testified that as a result of these meetings he took no food sample from Lake County Packing Company in 1951 and made no reports on Siciliano or the Packing Company, though during this same period he visited the Lake County Packing Company on several occasions, inspected it for cleanliness and saw meat products there including what appeared to be sausage and hamburger. During the same interval he visited other meat packing and processing plants in Lake and McHenry counties ·from which he gathered meat samples in connection with the performance of his duties as an inspector. It further appears that in 1949, prior to its operation by plaintiff in error, witness had visited the same plant and taken samples for analysis. The testimony of Evans as to his duties as inspector was corroborated by Christopher Beebe, chief chemist for the Division of Foods and Dairies and Evans's superior. Beebe testified that it was the duty of an inspector of the Department to inspect food establishments and pick up samples and follow them through as a witness in court when cases came to court. Beebe also testified, when later recalled by counsel for plaintiff in error, that it was not unlawful to slaughter horsemeat in the State of Illinois nor was it unlawful to process it and combine it with beef as long as there was no misrepresentation, but

that it was unlawful to mix horsemeat with beef and represent it as hamburger, since hamburger is defined as ground beef with spices not to exceed 30 per cent fat and does not provide for the presence of horsemeat. If sold and distributed as hamburger it must contain beef and spices only.

The gist of the offense of bribery is the giving to and receiving or accepting money or other valuable thing by a public officer to influence him with respect to the performance of his official duty. (*People* v. *Patillo,* 386 Ill. 566.) In proving the charges laid in the indictments it was incumbent upon the People to prove that Evans was a public officer; that money or other valuable thing was given by plaintiff in error to Evans and accepted by him and that the payments were for the purpose of influencing him in the performance of his official duties. The fact that the payments were made as testified by Evans is nowhere denied nor is it denied that at the times in question Evans was a public officer charged with the duties as set forth above. But plaintiff in error contends that the evidence falls short of proving that the payments were made to influence Evans in the performance of those duties, particularly in view of the fact that there was no evidence of any specific agreement by Evans to do or to refrain from doing anything relating to the duties of his office. Though there is no evidence of a specific agreement between Evans and plaintiff in error it seems abundantly clear that the payments made to Evans and accepted by him were calculated to influence him and that they accomplished their purpose as indicated by the uncontradicted evidence that no food samples were taken from the plant and no reports made. This, coupled with the testimony that plaintiff in error asked Evans to go along with him and told him he would be paid well for what he did, makes out a clear case of bribery. It is not suggested that plaintiff in error could have had any other reason for making payments of any sort to Evans, and the testimony of

Evans that the payments were, in fact, made stands uncontradicted. The weight and credibility of that testimony were matters for the jury. If believed by them, it was ample to establish, beyond a reasonable doubt, the charges laid in the indictments. This court will not substitute its opinion for that of the jury unless it appears from a consideration of all the testimony that there is a reasonable doubt of the guilt of the accused or that the verdict is the result of passion or prejudice. *People* v. *Ulrich,* 411 Ill. 316; *People* v. *Hinderhan,* 405 Ill. 435.

During the course of the trial the regular panel of jurors which reported to hear the case became exhausted by reason of challenges, and the court, following the provisions of section 13 of the Jurors Act, (Ill. Rev. Stat. 1953, chap. 78, par. 13,) ordered the sheriff to summon ten additional persons to report as prospective jurors. This was first discovered by counsel for plaintiff in error when examining some of the jurors summoned in this manner upon *voir dire,* and he immediately challenged the array of the supplemental panel on the ground that the court should have directed the clerk to draw the names of any additional jurors needed, relying on the provisions of sections 8 and 9 of the Jury Commissioners Act. (Ill. Rev. Stat. 1953, chap. 78, pars. 31 and 32.) The court denied the challenge. It is conceded that Lake County has a population large enough to require it to operate under the Jury Commissioners Act insofar as the provisions of that act apply, but counsel for the People contend that the act last mentioned contains no provisions dealing with the situation arising when the regular panel becomes exhausted by reason of the exercise of challenges during a trial; that the only statute dealing with that contingency is section 13 of the Jurors Act, which provides that the court shall direct the sheriff to summon a sufficient number of persons having the qualifications of jurors to fill the panel when the regular panel becomes exhausted by reason of

challenges. The Jury Commissioners Act was not amendatory of the earlier Jurors Act but must be regarded as merely supplemental legislation. (*People* v. *Johnson,* 2 Ill. 2d 165.) There is no provision in the Jury Commissioners Act which is designed to supersede section 13 of the Jurors Act. Section 9 of the Jury Commissioners Act, which provides for the manner of summoning jurors if more are needed during the month, was not designed to meet the contingency arising when the regular panel becomes exhausted due to challenges during actual trial, but rather to provide a method of insuring a full panel at the start of any given case, and is comparable in its scope and purpose with section 8 of the Jurors Act. (Ill. Rev. Stat. 1953, chap. 78, par. 8.) It is our conclusion that the court properly followed section 13 of the Jurors Act in summoning additional jurors and that in any event the plaintiff in error was not prejudiced by the procedure followed.

The State called several witnesses who, in the presence of the jury, refused to testify on the ground that their testimony might incriminate them. This was true of the principal witness, Evans, who was granted immunity as heretofore related. It was also true of witnesses Charles Wray, Nick Katsis, and John Lazar, all called by the People. Counsel for plaintiff in error takes the position that it was reversible error to permit the State's Attorney to call witnesses who, in the presence of the jury, refused to testify on the ground that their testimony might incriminate them. It is difficult to see how the court, in the orderly conduct of the trial, could possibly anticipate what witnesses may claim constitutional immunity. If counsel for plaintiff in error is correct in his theory, then it would be incumbent on any court hearing testimony in a criminal case first to hear all the testimony of each witness in chambers before permitting him to take the witness stand and testify before the jury. For how could it be determined in advance at what point in his testimony, if at all,

a witness might claim his privilege other than by hearing his entire testimony? We know of no cases and none are cited holding that the fact that a witness claims privilege against self incrimination in the course of his testimony *ipso facto* constitutes reversible error. The record before us shows that the trial court was careful to examine the witness out of the presence of the jury once constitutional privilege was claimed. In the case of Evans, immunity was granted, and he thereafter testified willingly. The jury was fully instructed on this procedure, as well as to the effect that claim of privilege by any witness was not to be taken as any evidence of guilt of the defendant. No error is claimed in these instructions. When the witness Wray claimed privilege, the court then examined him out of the presence of the jury and suggested that the witness be withdrawn temporarily. He was never recalled by the People. After several preliminary questions the witness Nick Katsis claimed constitutional privilege and the court immediately examined him out of the presence of the jury. This examination developed that Katsis, a truck driver, had hauled meat for the plaintiff in error and the court ruled that since the testimony showed that the most he could be charged with was a misdemeanor and since the time had elapsed during which such a charge could be brought, his claim was not well taken. Witness then proceeded to testify further before the jury. The witness Lazar claimed his privilege on the ground that he was then under indictment in Lake County and the court immediately excused him. Counsel for plaintiff in error relies on the case of *People* v. *Bennett,* 413 Ill. 601, to sustain his position in this respect. But the facts of that case are not at all like those in the case now before us. In that case one charged in the same county with having participated in the same crime with the defendant, though separately indicted, was called as a witness by the People and repeatedly questioned as to the details of the alleged crime. He was

compelled again and again in the presence of the jury to claim his constitutional privilege and the State's Attorney was able to suggest by implication, insinuation and innuendo that witness and defendant had committed the crime for which defendant was on trial. The record before us shows that the trial court did everything within reason to protect the rights of witness and defendant once the constitutional privilege was claimed. We cannot predicate reversible error on the mere fact that at some point in their testimony certain witnesses objected to testifying on the ground that their testimony might incriminate them.

During the course of his testimony, the witness Nick Katsis, at the request of the State's Attorney, was called as a court's witness, after which the State's Attorney was permitted to cross-examine him. This is also assigned as error. Katsis was called as a court's witness only after the witness had manifested a most remarkable lapse of memory. Plaintiff in error contends that the court erred in its action because Katsis was not an eyewitness and because his testimony was not material to the issues. The power of the court to call witnesses is not limited to the calling of eyewitnesses. (*People* v. *Gibson,* 385 Ill. 371, 381; *People* v. *Touhy,* 361 Ill. 332, 349-350.) The court may call a witness for whom the State's Attorney cannot vouch where it is shown that otherwise there might be a miscarriage of justice. (*People* v. *Bennett,* 413 Ill. 601; *People* v. *Laster,* 413 Ill. 224.) Though little or no information was obtained from Katsis, the questions were certainly material to the issues, for they related to the delivery of adulterated meat sold as hamburger and under the second indictment it was competent for the People to prove that the defendant had engaged in the sale of horsemeat represented as beef. The record shows that a proper foundation was laid for calling Katsis as a court's witness. (*People* v. *Curran,* 286 Ill. 302, 311.) Katsis' answers to questions first propounded were very evasive and the court

was also advised that Katsis had made contrary statements before the grand jury. In any event the record discloses that Katsis said nothing more detrimental to plaintiff in error while testifying as a court's witness than he did when testifying as an ordinary witness for the People. The failure of his memory remained practically complete. Under the circumstances plaintiff in error was not prejudiced.

Counsel for the People rested his case at 2:00 o'clock in the afternoon on the second day of the trial after calling only eight of the more than seventy witnesses listed as possible. Counsel for plaintiff in error then requested an adjournment until the following morning stating that he had subpoenaed several witnesses but none were present to testify at that time. The court expressed its unwillingness to adjourn at such an early hour. It developed that the witnesses to be called were character witnesses and counsel for plaintiff in error finally agreed that he would go along with the court if counsel for the People would stipulate that the named witnesses would testify to the good character of the accused if called. Counsel for the People agreed and counsel for plaintiff in error then addressed the jury, naming the witnesses, giving their occupations, and stating that it had been stipulated that if called they would testify to defendant's good character. Counsel for plaintiff in error then announced that he had no further proof and rested his case. The balance of the afternoon was consumed in the preparation of instructions. The following morning, prior to arguments, counsel for the plaintiff in error moved to reopen the case on the ground that he had additional character witnesses and one whose testimony might be in the nature of an alibi. The court denied the motion. This is assigned as error. Whether a case may be reopened for further evidence rests in the sound discretion of the trial court and it will not be interfered with unless clearly abused. (*People* v. *Kelly*, 378 Ill. 273; *People* v. *Lukoszus*, 242 Ill. 101.) The record be-

fore us shows that the statement made by counsel to the court was not sufficient to motivate the court to reopen the case, and the court did not abuse its discretion in refusing to do so.

Plaintiff in error tendered an instruction to the effect that the jurors should not be in any way influenced, nor their decision affected, by newspaper stories that may have come to their attention; that they should disregard such matters and decide the case solely on the sworn evidence coming from the witness stand. This instruction was refused. The record does not show the content of any newspaper story concerning the case, and we are unable to say that the instruction requested was necessary. Other instructions given were ample to direct the jury that the verdict must be based only upon the evidence and the law applicable thereto.

Careful consideration has been given to the contention that plaintiff in error was prejudiced by certain remarks and conduct of the trial judge. We have examined the record in all particulars mentioned and find that the argument is without merit. In view of the obvious reluctance of certain of the witnesses and the difficulties encountered, it may fairly be said that the court manifested commendable restraint.

The judgment of the circuit court of Lake County is affirmed.

*Judgment affirmed.*

Per CURIAM: After allowance of a petition for rehearing on November 15, 1954, this case has been reconsidered and the foregoing opinion is reaffirmed and readopted.