THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH D. NATOLI, Defendant-Appellant.

First District (3rd Division)   No. 77-1485

Opinion filed March 28, 1979.

132

RIZZI, J., concurring in part and dissenting in part.

James J. Doherty, Public Defender, of Chicago (Robert P. Isaacson, Assistant Public Defender, of counsel), for appellant.

134

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Rimas F. Cernius, and Marva W. Cohen, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

The defendant, Joseph D. Natoli, appeals from his conviction in a jury trial of possession and delivery of a controlled substance (ethchlorvynol), and his sentences of 1 to 3 years for delivery and 2 to 6 years for possession to run concurrently. He did not dispute his possession of the controlled substance, or that he delivered it to an informer, Kathy Krause, who was accompanied by an Elmwood Park police officer, Thomas Braglia, when she met with the defendant for the purchase. His defense was entrapment.

The defendant attacks his conviction on several grounds: (i) the trial court erred in permitting the prosecutor to cross-examine the defendant about a previous conviction, and even about charges on which he was never convicted; (ii) the prosecutor committed error in his closing argument when he called the defendant derogatory names, told the jury that the defendant's business was burglary and selling drugs, urged the jury to consider the defendant's prior burglary conviction for purposes other than determining his credibility, and suggested to the jury that the defendant was on parole and had violated his parole; (iii) the trial court improperly denied the defendant the opportunity to impeach an informer with evidence of her bad reputation for truth and veracity; (iv) the evidence failed to prove guilt beyond a reasonable doubt; and (v) the statutory classification of possession of ethchlorvynol as a Class 3 felony (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b)), while its delivery is denominated a Class 4 felony, a lesser offense (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(e)), is unreasonable, and violates the defendant's equal protection rights. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.

The State concedes that prosecutorial errors occurred; its position is that the evidence of guilt is so overwhelming that the errors were harmless. The evidence against the defendant was strong, but he still was entitled to present his defense to a jury that would judge his credibility free from prejudice created by the trial tactics of the prosecutors. The defendant's explanation for his conduct was that the State's informer, Kathy Krause, telephoned him or his home approximately a dozen times on the day he met her and during the preceding 3 days, importuning him to supply her with drugs, and he did so only because he felt sorry for her. Prosecutorial errors detracted from the defendant's credibility when he took the stand to present this defense, and thus prejudiced him. As a

reviewing court, we are unable to say with reasonable certainty how the jury would have viewed the defense of entrapment absent prosecutorial conduct designed to inflame the jury against the defendant and deny him a fair trial. Had the prosecutor engaged in only one impropriety, the error might more easily be excused as not substantially affecting the outcome of the trial. But in view of the combination of errors committed, it is pure speculation to say the jury would have reached the same conclusion had the errors not occurred. (*People v. Patterson* (1976), 44 Ill. App. 3d 894, 900, 358 N.E.2d 1164.) We believe that the defendant's conviction should be reversed, and that he should be retried on the charge of delivery. But, because of the sentencing provision for possession discussed below, the defendant cannot be retried on that charge.

Many of the errors the defendant complains of are not likely to recur at a new trial; therefore, we shall consider primarily those issues which may. These errors alone warrant granting a new trial.

■■ First, the defendant had a previous burglary conviction, which could be used to impeach him. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) The accepted way to introduce a prior conviction to impeach the credibility of a defendant who testifies in his own behalf is by offering an authenticated copy of the record of conviction during rebuttal. When direct examination has not covered that subject, it is improper to cross-examine a defendant about a previous conviction. *People v. Flynn* (1956), 8 Ill. 2d 116, 133 N.E.2d 257; *People v. Kosearas* (1951), 408 Ill. 179, 96 N.E.2d 539; *People v. Ring* (1967), 89 Ill. App. 2d 161, 232 N.E.2d 23.

The prosecutor not only violated this established rule but went on to ask the defendant about other charges preferred against him, including charges of armed robbery and possession of stolen goods. The defendant had not been convicted on any of these additional charges. Impeaching a defendant by showing that he has been arrested and charged with an offense for which he was not convicted is not permissible. *People v. Bennett* (1953), 413 Ill. 601, 110 N.E.2d 175.

■ The prosecutor compounded the prejudice to the defendant by proceeding to question the defendant on re-cross-examination about the specific facts surrounding the armed robbery charge. This interrogation only emphasized to the jury that the defendant in addition to being convicted of burglary had been charged with armed robbery. This entire examination was an erroneous and prejudicial incursion into areas where the prosecution should not tread. See *Bennett*.

*People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063, to which the State refers us, clearly differs from this case. There, a police officer on cross-examination by defense counsel referred in a

nonresponsive answer to a prior arrest of the defendant. The trial judge, on his own motion, immediately recessed the proceedings and offered defense counsel the opportunity to move to strike the officer's answer.

■ The next series of prosecutorial errors we note occurred in final argument. The prosecutor called attention to the defendant being on parole, and continued:

> "That man, that parolee, and by the way, you know what parolee means. Parole, when you are released from the pen, comes from a French word which means 'word of honor.' You see what Mr. Natoli's word of honor is worth. He goes out and delivers dope."

This argument was improper and prejudicial. First, the words "That man, that parolee' in effect use the defendant's prior conviction to render him a bad person instead of simply to attack his credibility. Second, the emphasis upon the defendant's having violated his "word of honor" invited the jury to convict the defendant because he was a burglar and had violated the terms of his parole, rather than because he was guilty of the charges being tried.

Further, the prosecutor referred frequently to crime being the defendant's business. Some of his remarks were:

> "[H]is business, ladies and gentlemen of the jury, is selling drugs.
> * * *
> The devil didn't make him sell drugs. That is his business.
> * * *
> He didn't come out rehabilitated. No he goes right back out on the streets and says now I am not going to be a burglar anymore. I am going to be a dope dealer."

■■■ It is reversible error for a prosecutor to refer to a defendant as a habitual or professional criminal, or to suggest that the defendant's business or occupation is crime. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880; *People v. Donaldson* (1956), 8 Ill. 2d 510, 518, 134 N.E.2d 776.) In *People v. McCray* (1978), 60 Ill. App. 3d 487, 490, 377 N.E.2d 46, the prosecutor asked the defendant whether he had any "occupation other than robbing people," and this was held to be reversible error. The court reasoned that the resolution of conflicting testimony revolved around credibility, and the prosecutor's question prevented the jury from evaluating the defendant's testimony dispassionately—even though in that case the trial judge had sustained an objection and instructed the jury to disregard the question. Here, the reference to burglary and dealing in dope as the defendant's business, and to the defendant's decision not to be a burglar anymore, improperly diverted the jury from deciding the issue of entrapment on the evidence. In addition, the suggestion that the defendant had not been rehabilitated by his prior prison sentence but

decided to become a dope dealer instead of a burglar, was an effort to use his burglary conviction to tell the jury that the defendant had a propensity to commit crime, an obviously improper implication.

■■ Defense counsel failed to bring these defects in the prosecutor's argument to the trial court's attention through a timely objection; but they affected substantial rights of the defendant, and justice requires that we take note of them under the plain error rule. (See Illinois Supreme Court Rule 615(a).) In applying the plain error rule we are mindful of the directives of our supreme court in *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856, and in *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, that the rule is only a limited exception to the doctrine of waiver. However, in several instances in this case, as in *McCray*, the prejudice occurred when the prosecutor's statements were uttered, and could not have been cured even by a timely objection.

■■ Next, the defendant complains that the trial judge refused to permit a defense witness to testify about the informer's reputation in the community. The State concedes this was error, but contends it was harmless because there was ample evidence already before the jury to prove that Kathy Krause was an agent for the Metropolitan Enforcement Group for Narcotics and Dangerous Drugs, that she was paid for the defendant's arrest and would be compensated only if the defendant were arrested, that other individuals had been arrested through her efforts, and that she had not graduated from high school and had used drugs herself. However, the credibility of the informer was important to the case. The frequency of her phone calls to the defendant's home, and what was said, were matters of substantial dispute between the prosecution and the defense. The defendant testified that the informer asked him for heroin, and she denied this; he also testified, and she denied, that he told her he was not dealing in drugs. In view of these sharp contradictions in the testimony, we would be speculating were we to conclude that testimony that the informer's reputation for truth and veracity was bad would not have influenced the jury to find the defendant had been entrapped.

The defendant contends that his convictions should be reversed without remandment for a new trial because the evidence was not sufficient to prove him guilty beyond a reasonable doubt. Were it not for the errors noted above, reversing the defendant's conviction for delivery would not be warranted. Kathy Krause, the informer, testified that the defendant previously had told her that if she ever needed drugs she should call him. She testified that she spoke to the defendant over the phone and asked him for "dust" for a friend. It took two phone calls for her to arrange the transaction with the defendant and to set the time and place for a meeting. At the appointed time, the informer and Police

Officer Braglia met the defendant and a woman in a shopping center parking lot. After entering the officer's automobile, the defendant delivered three plastic bags containing 25 capsules each of placydil, which contains the controlled substance ethchlorvynol, and accepted payment from Officer Braglia. The defendant gave the officer his phone number and told him they could deal directly in the future instead of going through the informer. The defendant also told the police officer he had a supply of drugs available for sale. As pointed out above, the defense was that Kathy Krause called at least 16 times over a 3-day period in an attempt to persuade the defendant to sell her drugs. The defendant also testified that Krause "almost begged" him for drugs.

A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee for the purpose of obtaining evidence for prosecution of that person. However, entrapment is not a defense if the public officer merely affords to such person the opportunity for committing an offense in furtherance of a criminal purpose which the person already has originated. (Ill. Rev. Stat. 1977, ch. 38, par. 7—12; *People v. Jackson* (1969), 116 Ill. App. 2d 304, 311, 253 N.E.2d 527.) In this case, the defendant's entrapment defense revolved around the credibility of his own testimony compared to that of informer Kathy Krause and Officer Braglia. The testimony of Krause and Braglia, if believed, was sufficient to prove beyond a reasonable doubt that the defendant was not entrapped, but rather acceded readily to Krause's request that he supply drugs. Thus, were it not for the errors noted above, reversing the defendant's conviction for delivery would not be warranted. However, because we are not convinced beyond a reasonable doubt that the jury, if not subjected to these errors, might not have found differently, this case must be remanded for a new trial.

■■ Finally, we turn to the defendant's equal-protection claim. Possession of ethchlorvynol is a lesser offense than delivery, in the sense that delivery includes all the elements of possession, and more. Yet the statutory scheme authorizes a *higher* penalty for possession, the lesser-included offense, than for delivery. The parties agree that this is irrational and unjustifiable; they dispute what to do about it. The State asks that the lesser penalty for delivery be set aside, and the greater penalty for possession left intact. The defendant correctly notes that the latter is no less irrational than the former. In his original brief the defendant requested that his sentence for possession be set aside; but in his reply brief he urges that both sentences must fall, and maintains he cannot be tried for either offense.

■■ The defendant contends that the sentencing structure must be treated as a whole, and that the equal-protection clause forbids, as a whole, irrational classifications, like the one so obvious here. But the clause does

not purport to ban irrational *classifications* as such; it provides only that no *person* may be denied equal *protection*. An essential element of every equal protection claim is that the law has placed the claimant in a worse position than some comparable person, or at least that the irrational classification has somehow prejudiced him. Where there is no injury there can be no claim. Irrationality does not of itself doom laws; the rationality test merely delimits which classifications and distinctions abridge the right, of those unhappy with the classification, to the equal protection of the law. Only those with such a right—those who have somehow been placed at a disadvantage—deserve relief. The typical equal protection claim addresses a burden on the claimant so clear that only its propriety, not its existence, is at issue. The typical argument, therefore, focuses entirely on rationality. Under these circumstances, it is easy to slip into the habit of identifying the rationality test with the equal protection clause itself. But the rarity of any dispute over the existence of a disadvantage does not make that aspect of the equal protection clause less vital.

In this light it is clear that the statutory sentence for delivery is valid, and that the sentence for possession is not. The defendant was given a heavier sentence for possession than could have been imposed upon someone convicted of delivery, a worse offense, and was thereby denied the equal protection of the law. But a convicted deliverer cannot complain of being sentenced more leniently than a possessor would have been. The defendant has not been discriminated against or suffered any disadvantage by reason of the comparative mildness of the sentence prescribed for delivery. The equal protection clause does not shield him from favors, however senseless. The defendant is not asking to be sentenced more severely, like a possessor. He is not unhappy with his classification, only with his sentence. But, there is no right not to be sentenced for one's crimes. The defendant's equal protection claim is that his sentence for delivery was improperly light, but he really seeks to escape any sentence. He asks, not to be reclassified, not for reformation of the statute to eliminate the equal protection problem, but to have his sentence eliminated entirely. He attempts to have a legislative error in his favor magnified into the windfall of acquittal. This the constitution does not require.

Since this case is being remanded, one more problem may arise. On retrial, the defendant might be convicted of possession only. It is necessary, therefore, to consider whether the possession statute is completely dead, or whether perhaps some sentence less than the prescribed one can be imposed for the offense. There is authority for the proposition that a penalty provision which violates equal protection does not necessarily require reversal of the underlying conviction. In *People v. Boyer* (1974), 24 Ill. App. 3d 671, 321 N.E.2d 312, *rev'd on other grounds*

(1976), 63 Ill. 2d 433, 349 N.E.2d 50, the appellate court found the aggravated incest statute (Ill. Rev. Stat. 1971, ch. 38, par. 11—10) to violate equal protection, as it pertained only to men, but held that the lesser penalty provided in the incest statute (Ill. Rev. Stat. 1971, ch. 38, par. 11—11) could be imposed. The incest statute was drafted in such a way as to exclude aggravated incest, and Boyer could not, therefore, be convicted of incest. But it was clear that the legislature had intended that aggravated incest be· punished no less severely than incest; in fact, to have held otherwise would have created an anomaly like the one in this case: men guilty of aggravated incest would have gone free, while those convicted of incest, which the legislature clearly regarded as less serious, would have been punished.

■■ In this case, there is no such clearly implied legislative mandate. The sentence prescribed for possession is obviously a mistake. There is no way of knowing exactly how severely the legislature wanted possession punished. It is impossible to determine whether the legislature's intent was to punish possession as severely as, or, as would be more logical, less severely than, the more serious offense of delivery. Any penalty—even one no longer than the 1- to 3-year term provided for delivery, and therefore perhaps satisfying an equal protection objection—would be purely speculative, not to say *ex post facto*, because there is no way of knowing whether the legislature intended that punishment for a possessor should be as severe as that for a deliverer.

In *People v. Rhodes* (1967), 38 Ill. 2d 389, 231 N.E.2d 400, there was no question of what the legislature intended in providing sentences for attempt. The statute in question directed that attempt could be punished by a term not longer than the one provided for the offense, and in any event fixed a ceiling of 14 years for miscellaneous attempted forcible felonies. The court merely applied the statute, which clearly indicated the punishment those guilty of attempt might receive. In this case, we do not even have a basis for guessing how the legislature intended to punish a person guilty of possession. In approving an attempt theft sentence as great as the maximum provided for theft, the court in *Rhodes* was merely approving a sentence as in all respects conforming with a valid statute. The court was not relying on the length of the sentence actually imposed to rescue an improper or indefinite sentencing provision.

■■ Since a statute containing prohibitive language without a penalty is a nullity (*People v. Graf* (1968), 93 Ill. App. 2d 43, 235 N.E.2d 886), we reluctantly·hold that the charge of possession must be dismissed.

■■ The doctrine that constitutional questions should not be passed upon unless absolutely necessary has no relevance to this appeal. The difficult problem in this case is not whether it is proper to sentence a defendant to a longer term for possession than for delivery. No one really denies that

this violates equal protection. Rather, the key question this case raises with respect to the possession sentence is whether it is permissible to impose any sentence not longer than the 1- to 3-year term provided for delivery. And, our resolution of that question does not turn upon application of the equal protection clause. Instead, it rests upon the principle that courts cannot reshape patently invalid statutes in order to justify the imposition of sentences the legislature may never have intended.

In view of our conclusion, the statutes are left without any sentencing mechanism for possession, and possibly with a shorter sentence for delivery than the legislature actually intended. This oversight is urgently invited to the attention of the legislature and the supreme court. Recommendations should be made immediately to the Governor and the legislature for the adoption of corrective statutes.

Reversed and remanded in part for new trial.

McGILLICUDDY, J., concurs.


Mr. JUSTICE RIZZI, concurring in part and dissenting in part:

The defendant was convicted in a single jury trial for both possession and delivery of a controlled substance. (Ill. Rev. Stat. 1977, ch. 56½, pars. 1401(e), 1402(b).) He received a sentence of 2-6 years for possession of 18 capsules of ethchlorvynol and only 1-3 years for delivery of 75 capsules of the same substance. The majority reverses the conviction as to delivery of the substance and remands the case for a new trial only on that charge because of prosecutorial errors during the trial. But the majority reverses and dismisses the conviction as to possession of the substance on the basis that the statute is unconstitutional in that it provides for a maximum sentence that is greater for the crime of possession than it is for delivery of the substance. Under the statute, possession of a controlled substance is a Class 3 felony and delivery of the substance is only a Class 4 felony. The maximum term that one can be sentenced for a Class 3 felony is in excess of 1 year and not exceeding 10 years. The maximum term that one can be sentenced for a Class 4 felony is in excess of 1 year and not exceeding 3 years. Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1.

I agree with the majority opinion that the defendant did not receive a fair trial because of the flagrant prosecutorial errors during the trial. I would, however, reverse both the delivery *and* possession convictions on that basis, without considering the constitutional question. I believe the long-established principle that a reviewing court should not pass on a constitutional question if the case may be disposed on other grounds should be adhered to in this case. (*Howard v. Lawton*, 22 Ill. 2d 331, 334,

175 N.E.2d 556, 558 (1961); *Illinois Central R.R. Co. v. Illinois Commerce Com.*, 411 Ill. 526, 534, 104 N.E.2d 796, 800 (1952); see 2 Ill. L. & Prac. *Appeal and Error* §632, at 561 (1953).) Specifically, in *Howard*, 22 Ill. 2d 331, 334, 175 N.E.2d 556, 558, the court stated:

> "We pass upon constitutional issues *only* where the cause cannot be decided on other grounds." (Emphasis added.)

Although the majority, in its conclusion, suggests that its holding regarding the dismissal of the possession charge is not based upon constitutional grounds, it is clear that if the statute is not held to be unconstitutional, then the possession charge cannot be dismissed. The holding of the majority cannot logically be reached unless based on its conclusion that the statute is unconstitutional.

If, as I suggest, the entire case is retried, the defendant may be found guilty solely of possession of the controlled substance, or he may be found guilty of both delivery and possession. He may then be sentenced to a term of 1-3 years for possession, *i.e.*, within the prescribed limits under the statute for a conviction of delivery. Certainly, the statute would not then be unconstitutional in its application to the defendant since he would not have received a greater sentence for possession than delivery of the controlled substance. A somewhat analogous circumstance existed in the case of *People v. Rhodes*, 38 Ill. 2d 389, 395-96, 231 N.E.2d 400, 403 (1967), where the court found that the defendant's constitutional rights were not violated and stated:

> "There is no merit to the defendant's contention that the 5-to-10-year sentence he received was in excess of the punishment authorized.
>
> Section 8—4, the statute under which the defendant was sentenced, provides for a punishment of not more than 14 years for a forcible felony attempt. The sentence imposed was not in excess of punishment authorized. Section 16—1 authorizes a penalty of one to ten years for grand theft. *It is urged that due process was denied, as the defendant might have been punished more severely for the attempt than for the completed crime of grand theft.* We agree with the People's reply that section 8—4 only provides that the punishment for any forcible felony attempt shall not exceed 14 years and does not provide that the punishment for a given attempt may exceed that provided for the completed crime concerned. *The penalty here imposed does not exceed the maximum punishment which could have been given for the completed crime of grand theft.*" (Emphasis added.)

I believe a reviewing court must consider the ramifications of its decision before unnecessarily, in my opinion, deciding the constitutionality of a criminal statute as important as one dealing with the

possession of controlled substances. As a result of the majority opinion, there will not exist a valid criminal statute for possession of a controlled substance in this geographical area. Immediately, it means the present defendant cannot be retried for the charge of possession of a controlled substance, although the majority opinion candidly states that the evidence presented in the trial is sufficient to find him guilty of the crime beyond a reasonable doubt. I cannot accept these consequences unless they are absolutely necessary, and in my opinion, they are not necessary because the constitutionality of the statute need not presently be decided under the circumstances of this case. In light of the legislature's recognition of the rising incidence in the abuse of drugs and other dangerous substances and its resultant damage to the peace, health, and welfare of the citizens of Illinois, I believe the majority is making a mistake. Specifically, the legislature has stated its intent of the Illinois Controlled Substance Act, in part, as follows (Ill. Rev. Stat. 1977, ch. 56½, par. 1100):

"Legislative intent.] It is the intent of the General Assembly, recognizing the rising incidence in the abuse of drugs and other dangerous substances and its resultant damage to the peace, health, and welfare of the citizens of Illinois, to provide a system of control over the distribution and use of controlled substances which will more effectively * * * deter the unlawful and destructive abuse of controlled substances * * *."

In my view, if this entire case is remanded for a new trial, the legislature may wish to review the statute and make an appropriate amendment so that possession of a controlled substance is listed as a Class 4 felony and delivery is listed as a Class 3 felony. The legislature would be able to do this *before* the constitutionality of the statute is considered and possibly voided judicially, thus, avoiding the untoward ramifications of the majority opinion in this case.

I believe, for the reasons stated, both the delivery and possession of the controlled substance convictions should be reversed and the entire case remanded for a new trial because of the prosecutorial errors during the trial, without considering the constitutional question.