(No. 22042.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH DANIELS *et al.* Plaintiffs in Error.

*Opinion filed December 22, 1933—Rehearing denied Feb. 8, 1934.*

JAMES M. BURKE, and GEORGE M. CRANE, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, GRENVILLE BEARDSLEY, and THOMAS A. DILLON, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error were convicted in the criminal court of Cook county of the crime of robbing one Albert Kaufman while armed with a gun and taking from him the sum of $40. A jury was waived and the cause tried before the court. They bring the cause here for review, assigning as error certain rulings of the court on admission of testimony, the calling of certain witnesses by the court on motion of the State's attorney, and certain alleged inflammatory remarks on the part of the State's attorney. It is also argued that there is a variance between the indictment and the proof, and that plaintiffs in error did not receive a fair trial.

Plaintiffs in error did not testify and no evidence was offered in their behalf.

The facts shown without dispute in the record are, that on December 19, 1932, at room 436 in the Saratoga Hotel, in the city of Chicago, one Rudy Singer was operating a book-making and gambling place. At about 2:00 o'clock on the afternoon of that day a number of men, variously stated to be eight or ten to fifteen or more, had congregated there; that a voice was heard to say, "Stick them up and turn your face to the wall!" The occupants of the room were then told to lie down on the floor, which they did.

Albert Kaufman testified that he had $40 in his hand which a man with a handkerchief over his face took from him. One Martin Springer testified that he had $600 taken from his pocket. It appears that two were engaged in the robbery, and after having completed search of those present they started out of the door and found that policemen were outside in the hall. These men then closed the door and they, too, lay on the floor. Later the door was opened by a bell-boy and the occupants of the room were directed by the police to hold up their hands and come out into the hall backwards. Police officer Gall testified that about twenty men came out and that plaintiffs in error were among them. Kaufman was standing next to the officers and pointed out plaintiffs in error. The officers searched them but found no weapons on them. Gall testified that he said to plaintiff in error Daniels, "Why did you do it?" and that the latter replied, "I don't know; I must have been screwey." The officer also testified that he asked Daniels what he did with his gun, and that Daniels said, "I threw it out of the window;" that he asked plaintiff in error Danford what he did with his gun, and that he replied that he threw it out of the window also; that witness replied, "No, you did not throw it out of the window;" that Daniels then said to Danford, "Tell him where you left the gun," and that Danford then stated it was in a pillow in the room. Gall then went into room 434,

which was connected by a doorway with room 436, and opened a pillow and found an automatic pistol, which was introduced in evidence as People's exhibit No. 1. The magazine of the pistol contained seven cartridges.

Singer, the operator of the place and the employer of Kaufman, was not present at the time of the hold-up but was near by and heard the command of the robbers. He testified that he met some officers on the outside; that the door had been closed, and that after it was opened the officers commanded all of the occupants to come out and searched them as they did so, and that the officer then went into the room and found a gun in the pillow-case. Witness was present at the time the gun was found. He stated that he had never seen it and it did not belong to him though it was found in room 434, which was his living room.

Samuel Lamott, the bell-boy at the hotel, testified that he was on the fourth floor of the Saratoga Hotel and saw some officers with drawn pistols at room 436; that he at their direction took a pass key and opened the door of room 434 and went in and saw two men, one of whom was standing near a window. He saw a revolver thrown out of the window by plaintiff in error Daniels. He saw the two men pointed out to the officers. He thought Kaufman pointed them out. Those men were searched by the officers. Witness was present when the revolver was found in the pillow-case and noticed feathers on the coat of Danford. The two plaintiffs in error appear to have been strangers to the rest of the men present.

Plaintiffs in error argue that it was error to offer the two pistols in evidence as they had not been identified. Exhibits Nos. 1 and 3 were offered and admitted in evidence. No. 1 was identified as the pistol found in the pillow-case, as directed by Danford. It does not appear from the abstract what exhibit 3 was, but it is stated by counsel that it was another pistol. There is nothing in the evidence to identify that pistol and it was not prop-

erly introduced in evidence. The evidence is, as we have seen, that another pistol was thrown out of the window by Daniels. Whether this was the pistol which Daniels threw from the window is not disclosed in the abstract. While it should not have been introduced in evidence, no prejudice of plaintiffs in error's rights appears from this error, and it is clear that two pistols were used in the robbery.

Counsel for plaintiffs in error also argue that they were not identified as the persons who committed the crime. They were pointed out by Kaufman. They apparently were the only ones there who were strangers to him, and, as we have seen, the statements made to the officers are tantamount to a confession of their participation in the robbery. There is no dispute in the evidence. Counsel say, however, that the *corpus delicti* was not proved, and statements of the accused may not be used to prove *corpus delicti*. There is, as we have seen, an abundance of evidence in the record to establish the commission of the robbery aside from the statements of plaintiffs in error.

It is argued that the court erred in calling the witnesses Lamott and Springer as the court's witnesses and in recalling Kaufman, after his direct examination, for cross-examination by the State's attorney. The State requested that the court call Lamott and Springer for the reason that they made oral statements which contradicted their previous written statements and that the State was not willing to vouch for them. The basis of the motion for recalling Kaufman as the court's witness was that the State was taken by surprise by the witness' answers and wished to cross-examine him with reference to testimony which he had given before the grand jury and on preliminary hearing. The court recalled him as a witness and he was asked concerning his examination at the preliminary hearing, but stated he did not remember what his answers were. Police officer Donahue was then called to the stand and testified

that Kaufman was a witness on a preliminary hearing and there testified that he saw the men who held him up and pointed out the plaintiffs in error. The court also called Lamott and Springer, but it does not appear from the abstract that they were examined as court witnesses, as the prosecuting attorney first examined them and they were later examined at some length by counsel for the accused.

Concerning the recalling of Kaufman, it is urged that it was error to permit the State to impeach its own witness, and that the court erred in recalling him as a court witness for that purpose. The rule is, that where the State's attorney, for some reason which he states to the court, may doubt the integrity or veracity of a witness, he is not obliged to call him as a witness for the People and such witness may be called by the court and cross-examined by either side. The practice of the court calling witnesses, however, is not to be extended beyond this point and the cross-examination should be limited to the issues involved. (*People* v. *Cleminson,* 250 Ill. 135; *Carle* v. *People,* 200 id. 494.) Here the State's attorney stated to the court that he was surprised by the testimony of Kaufman, which was different from that before the grand jury and on preliminary hearing, and that Lamott and Springer had made oral statements which were in conflict with the statements which they had made in writing. The fact that a witness has made statements outside of court differing from the ones he has made on the witness stand does not give a right to a party calling him to attempt to impeach his testimony. (*People* v. *Johnson,* 314 Ill. 486.) In this case, however, the State's attorney stated to the court that he was taken by surprise by the change in testimony of Kaufman and therefore could not further vouch for him. Impeachment of Kaufman could not have been prejudicial to the plaintiffs in error since he was one of the State's witnesses and his impeachment tended only to weaken the evidence of the People. As we have seen, however, there

was evidence aside from that of Kaufman showing the commission of the crime and no evidence to the contrary. While the State's attorney should disavow a witness as soon as he discovers his change in testimony, we are of the opinion that later attempts to impeach Kaufman did not work prejudicial injury to plaintiffs in error.

The remarks on the part of the State's attorney complained of were to the effect that he thought that the case was "fixed" or that someone was trying to do so, and he asked for a warrant charging Kaufman with perjury. Inflammatory remarks of the State's attorney resulting in prejudicial error have frequently been made the ground for reversing a judgment in a criminal case. The question always is whether the remarks tended to inflame the minds of the jury, or the court where a jury is waived. Such remarks made in the presence of a jury would clearly be prejudicial, yet in this case, where the matter was heard before the court, and particularly where the evidence of the police officer Donahue showed basis for the State's attorney's opinion of the witness Kaufman, we are of the opinion that the statements made by the State's attorney were not sufficient to justify a reversal of the judgment, where, as here, there is no dispute of the commission of the crime or evidence that the court was influenced by the remarks.

Concerning the contention that there was a variance between the indictment and the proof, counsel for plaintiffs in error say that while the indictment charges that the $40 taken from Kaufman was his money, the proof showed that he was an employee of Singer and that the money belonged to Singer. Robbery is the felonious and violent taking of money from the person of another by force or intimidation. If such are proved to be the facts the ownership of the property is unimportant, as possession of the property by the victim is sufficient for the purpose of establishing the charge of robbery. The gist of

the offense of robbery is the force or intimidation used in taking from the person of another, against his will, property belonging to him or in his care. (*People* v. *Knox*, 302 Ill. 471; *People* v. *Hansen*, 263 id. 44; *Burke* v. *People*, 148 id. 70.) The essential features of the crime were proved without controversy. Plaintiffs in error cannot expect to secure a reversal of the judgment in this case on the ground the trial was not free from error. *People* v. *Fox*, 319 Ill. 606; *People* v. *Burger*, 259 id. 284.

We are of the opinion that the plaintiffs in error were proved guilty beyond a reasonable doubt, as required by law, and that there is no error in the record justifying reversal of the judgment.

The judgment is therefore affirmed.

*Judgment affirmed.*