(No. 23523.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES PETERSON, Plaintiff in Error.

*Opinion filed June 10, 1936—Rehearing denied October 7, 1936.*

JOHN H. ROGERS, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-
NEY, State's Attorney, and A. B. DENNIS, (EDWARD E.
WILSON, JOHN T. GALLAGHER, RICHARD H. DEVINE, MEL-
VIN S. REMBE, and E. I. HARRINGTON, of counsel,) for
the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Charles Peterson, who will be referred to as the de-
fendant, was convicted of manslaughter in the criminal
court of Cook county and seeks review of the record of
that conviction by this writ of error. The indictment
charged him with having caused the death of Glenn Peters
by means of the felonious, wantonly-negligent driving and
willful mismanagement of an automobile. One of his con-
tentions is that the record fails to establish his guilt beyond
a reasonable doubt, and it will therefore be necessary to re-
view the evidence.

Peters was killed on Franklin avenue, in the city of
Chicago, not far from the intersection of that avenue with
Atlantic street. From a plat in evidence Franklin avenue
appears to be eighty feet wide and to be a diagonal street
obliquely intersecting Belmont avenue and the other streets .
in the vicinity. On behalf of the People, Beulah Peters
testified that she was the wife of the deceased and that
together they drove up and parked their car in front of
a confectionery store on Franklin avenue, near Belmont,

at 9:50 P. M., December 16, 1934; that their car was facing west at a point directly north of the intersection of Atlantic street at Franklin avenue and on the north side of Franklin avenue. She testified that the car was parked up against the curb; that her husband got out of the car on the left-hand side into the street and that she followed him; that they talked for about a second, she having asked him for money and he having just placed a small sum in her hand; that there was a crash, and she saw her husband thrown in the air, turn a complete somersault and come down at a distance of fifty feet from where he was hit, and that his head hit a post when he came down. From this injury Peters died, and neither the fact of his death nor the cause thereof is in dispute.

Josephine Herff testified that at the time and place of the accident she was standing at the intersection, talking with a friend, and heard the crash; that she saw Peters' body making a somersault in the air, and that she saw an automobile pass, going east on Franklin avenue, about twenty feet from the north curb; that she saw no difference in the speed of the car from the time it hit Peters and the time it passed her. In her judgment it was going about thirty-five miles per hour, and it was about a block away from her when it stopped.

Charles Hart, for the People, testified that he was near the intersection at the time in question; that he heard a woman scream and that he saw a body lying on the north side of Franklin avenue, and that the body was about fifty feet from the place where the Peters car was parked. He further testified that the car which caused the accident stopped about two blocks from the scene thereof; that when he first saw the moving car it was driven about ten miles an hour and then speeded up to about eighteen or twenty miles an hour.

Walter Inda testified that he was walking east on the north side of Franklin avenue when he heard a crash and

a woman scream; that he saw a car pulling out from the north side of the street about ten feet from the curb and about four hundred feet from where the witness was standing; that he put his hand out and "hollered" at the traveling automobile, but it kept on going and was driven at about twenty-five miles an hour when it passed him; that he saw a man at a gas station run out to flag the defendant's car, and that he went on to the scene of the accident.

Max Nettleton, the gasoline station attendant referred to by the last witness, testified that he heard a scream and saw a car coming down the street; that he went out and called to the driver to stop, and that the car went by him one hundred feet before it stopped. In his opinion it was going about twenty-five miles an hour when it passed him. He testified that he went over to the car and got its number, which he copied down on a piece of paper; that the defendant was sitting behind the wheel and another man was with him in the car and no one else; that he said to the defendant, "You must have hit someone up the street," and that the defendant said, "No, I did not hit anybody. Somebody passed by me up there but I did not hit anybody." He further testified that the hood of the defendant's car was bent, the left head-light bent over, and the shell of the radiator was bent above the lamp; that he did not observe the defendant's condition; that Harry Anderson was present at this conversation, and that a police officer placed the defendant and the other man in the car under arrest at that time. Harry Anderson testified to somewhat similar facts. He stated that he asked the driver if he hit anybody, and the driver said, "No; what is it all about?"

Victor Casper testified that he heard the crash, ran to the scene of the accident and saw the body of Peters lying forty-five or fifty feet from where the Peters car was parked.

C. E. Freyberger, a physician, testified that he saw the defendant in the police station about one and one-half hours after the accident and examined him; that he asked him

if he had been drinking, and he said he had five steins of beer and several whiskies; that on further examination the defendant swayed some when he stood with both feet together and that when he walked a chalk line he swerved to one side; that the witness smelled alcohol on the defendant's breath and that the pupils of his eyes were constricted but that he could read printing. He also testified that at that time the defendant gave two different addresses on Hirsch street. It was his opinion, after making the examination, that the defendant was somewhat under the influence of liquor but that he was not intoxicated.

Ralph H. Gohrsch, the chief of police of Franklin Park, testified that he saw the defendant about 9:15 P. M. on the night of the accident in a tavern, in company with three other people. He testified to the defendant's leaving the tavern; that Franklin street is about fifty feet wide; that there are lights on the north side of that street about one hundred feet apart, and that these lights were burning on the night of the accident. He further testified that the streets were icy in spots. He did not notice the condition of the defendant at the time he saw him at the tavern, as there was nothing unusual about him to attract his attention.

Robert N. Connell, a police officer in Franklin Park, who arrested the defendant, testified that he asked the defendant what happened, and that he replied, "We hit somebody down there," and that the witness said, "If you hit somebody down there a couple of blocks what are you doing away down here?" The defendant did not answer that question. The witness testified that he noticed nothing out of the ordinary in the defendant's speech or walk. He further testified that he found about a half bottle of liquor in the defendant's car and that he took it to the police station and locked it up, and that the bottle produced in court is supposed to be the same as it was when he found it. He also testified that he was present when Dr. Freyberger examined the defendant, and that during this examination,

when the defendant stood with his heels close together, he could not stand without swaying about one inch each way but that he could walk pretty regular; that he could smell the odor of liquor on the defendant inside the building but did not notice it in the open air, and that the defendant told the witness that he had been drinking.

It was stipulated that the deceased was six feet two inches tall and weighed about 240 pounds.

Ford S. Clark, who was in the company of the defendant prior to and at the time of the accident, was called as the court's witness, and when examined by the court testified he was a salesman, and that he went to the tavern in company with his wife, a Mrs. Kearin and the defendant; that after leaving the tavern he was sitting in the rear seat, on the right-hand side; that the streets were icy and slippery, and at the time of the accident the defendant was driving fifteen or twenty miles an hour. On cross-examination by the People he testified that they were in the tavern about three hours, and the defendant had one drink of liquor before dinner and one during the meal; that Mrs. Kearin and himself had no whisky out of the bottle but that his wife had two drinks, and that he did not see the defendant have more than two drinks. He further testified that the car skidded when it turned onto Franklin street and that it skidded again just before Peters was struck; that he heard a thud, and said to the defendant, "We have struck somebody," but the defendant said nothing, and then he said to the defendant, "Stop. I think we struck somebody. Stop the car." That the defendant stopped the car as soon as he could; that he saw Peters' body up in the air on the left side of the car and it was up on the hood, but he did not think the body rolled up over the top of the car. Upon cross-examination by the defendant's attorney he testified that the defendant's condition was good, and that as soon as he stopped the car they both got out and with the help of some men pushed the car over to the curb;

that the officer would not let them go back to where they had struck the man but took them to the police station.

Robert Connell was re-called and testified that he put a pencil line on the outside of the bottle of liquor which was introduced in evidence, but he could not explain the discrepancy as to the amount in the bottle at that time and as to the line, which was about one inch above the level of the whisky in the bottle.

Rose Stalleto, a witness for the defendant, testified that she operated the tavern at which the defendant and his party had dinner the night of the accident; that they ordered four chicken dinners and had twelve beers, and that they did not order any whisky and that the defendant was not drunk.

Augusta Kearin testified that she was with the defendant at the tavern and rode in the front seat with him; that she had two beers and that the defendant had two whiskies and three beers, and that he was not intoxicated. She further testified that she did not see the car strike anyone but heard a bump and asked the defendant to stop, which he did as soon as possible, and that she and Mrs. Clark got out of the car when it stopped and walked three miles to a car line. She testified on cross-examination that the weather was sort of hazy and there was a lot of ice on the street; that she thought the defendant was driving about in the middle of the street, but it was hard to tell, as the ice was piled up so they could not see the sides of the street, and that the car was driven about twenty-five miles an hour.

Four witnesses testified that the reputation of the defendant in the neighborhood where he resided and among the people with whom he worked was good.

Lucy Clark, the wife of Ford Clark, testified that they went to Rossi's Tavern for dinner; that the defendant had two drinks of whisky but at no time was under the influence of liquor; that the streets were icy and they were not

driving fast; that she heard a noise and someone scream but did not see the car strike anyone, and that after the car stopped she got out of the car and went home.

The defendant testified that Mr. and Mrs. Clark and Mrs. Kearin and himself left Mrs. Kearin's home about 6:00 o'clock in the evening and went to Rossi's Tavern, in Franklin Park, arriving there about 7:00 o'clock, and ordered chicken dinners; that he had two drinks of whisky and several beers while in the tavern; that while he was there he met the chief of police; that around 9:30 they left the tavern, and as he was driving east on Franklin avenue, at about twenty miles an hour, he saw a car which he thought was coming towards him, as the lights were very bright, and as he passed abreast of the car he felt a jar, and someone in the back seat said, "You hit something;" that he did not see anything that happened but stepped on the brakes, and the car started to skid, so he released the brakes and stepped on the accelerator to straighten the car out, and that he brought the car to a stop as soon as he could; that as near as he could judge he was in the middle of the street and that there were ruts in the ice caused by the traffic; that after he stopped the car they all got out and several people came up to him. He testified as to his arrest and the tests made at the police station by the doctor.

The foregoing brief review of the evidence for the People and for the defense indicates that the record, as a whole, warranted conviction of the defendant. His argument as to the insufficiency of the evidence is largely based upon the oral testimony of the witnesses as to various estimates of speed, but this ignores the surrounding circumstances, which are of serious import. It is probable that the jury took into consideration the fact that the deceased was a large man, weighing 240 pounds; that his body was thrown high enough into the air to turn a complete somersault and was hurled a distance of fifty feet from where the collision occurred; that he struck a post with such force

as to fracture his skull and several other bones; that the left head-light and left part of the radiator shell of the car was bent and dented and that the hood was dented on the left top part; that the defendant's car traveled approximately two blocks after the accident before being stopped, and that by the time those near by arrived at the point of stopping the two female occupants of the automobile had seen fit to hastily depart, with considerable inconvenience to themselves. The jurors were not required to ignore the import of these established facts merely because some witnesses gave their opinion that the car was traveling at a low rate of speed.

The above facts also obviate the defendant's second principal contention, which is that the court erred in admitting the partially-full bottle of whisky in evidence. The facts above set forth would be sufficient to justify the verdict of the jury, whether the defendant was drunk or sober. It was not necessary to their verdict that they should find him to have been intoxicated, and evidence of intoxication was cumulative, at most, as bearing upon the gist of the offense. We cannot assume that the sight of a bottle partly full of whisky would so arouse the passion and influence the minds of the jurors as to seriously prejudice the defendant's rights, and we therefore pass the question of the court's ruling on this exhibit as not prejudicial error, even if erroneous. This was not a case in which the jury fixed the penalty.

The defendant further complains that it was error for the trial court to call Ford S. Clark as a court's witness. Clark was the companion of the defendant at the time and place of the accident, had been with him all evening, and had testified at the coroner's inquest. The prosecuting attorney, out of the presence of the jury, stated these facts, stating further that Clark's testimony at the coroner's inquest had been in many ways contradictory and inconsistent and that the People did not care to vouch for his credi-

bility. Clark was an eye-witness to the accident, and his being called by the court was within the rules laid down in *Carle* v. *People*, 200 Ill. 494, *People* v. *Cleminson*, 250 id. 135, *People* v. *Daniels*, 354 id. 600, and *People* v. *Touhy*, 361 id. 332. There was no error committed in this respect.

We have held that where a person drives an automobile in a willful and wanton manner, disregarding the safety of others and in such a manner as to indicate a disregard for the safety of others, and thereby causes a person's death, he is guilty of manslaughter. (*People* v. *Smaszcz*, 344 Ill. 494; *People* v. *Flanagan*, 338 id. 353; *People* v. *Herkless*, 361 id. 32.) The same cases hold that it is the province of the jury to determine, from a consideration of all the evidence, whether the car was driven in such a manner as to show an utter disregard of the rights of other persons using the street. As we have seen, the testimony and surrounding circumstances in this case were such as to permit the jury to arrive at a conclusion of guilt without acting unreasonably, and we must decline to disturb their verdict.

A further point is raised by the defendant in connection with the argument of the assistant State's attorney who tried the case for the People. Two objectionable remarks were made, but neither of them of any seriously prejudicial character. In one instance an objection was sustained, and the prosecutor immediately withdrew the remark and apologized for it. As to the other improper statement, an objection was promptly sustained and the jury instructed to disregard the remark. We can find nothing of importance presented under this branch of the case, and upon the whole record we are of the opinion defendant had a fair trial.

The judgment of the criminal court of Cook county will therefore be affirmed.

*Judgment affirmed.*