Commonwealth *v.* Crews, Appellant.

Argued November 17, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph I. Lewis,* for appellant.

18

*Edwin J. Martin,* Assistant District Attorney, with him *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 15, 1968:.

On November 13, 1965, between 8:00 and 9:00 p.m., the deceased, Raymond Germek, was operating a taxicab in the City of Duquesne. While there was a fare in the front seat of the cab, two men opened the back doors and requested the driver to take them to McKeesport. The driver replied he could not take them because he had another fare elsewhere. The fare exited from the cab a block after the two men entered. Within the next few moments, the driver was stabbed twice about the head, and the two men were seen running away. The cab driver stated to various people that two Negroes had tried to rob him. Although he managed to drive his cab to McKeesport Hospital, Germek died five days later from complications from the stab wounds.

Appellant, along with one Fred Tedders, was indicted for murder. A severance was requested and granted. Tedders was tried first and convicted of first degree murder. Crews was then tried beginning November 28, 1966, and was convicted by a jury of first degree murder, with penalty set at life imprisonment. Appellant's motions for new trial and arrest of judgment were denied by a court en banc. This appeal followed the judgment.

Appellant argues that the court below erred in denying these motions. We hold that the denial of the motion for arrest of judgment was proper, but that it was error to deny the motion for new trial. .

On motion for arrest of judgment the test is "whether accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable

doubt that the defendant is guilty of the crime charged." *Commonwealth v. Kravitz,* 400 Pa. 198, 201, 161 A. 2d 861 (1960) and cases cited therein. Moreover, in passing upon such a motion, all evidence actually received must be considered, whether the trial rulings thereon were right or wrong. *Commonwealth v. Tabb,* 417 Pa. 13, 207 A. 2d 884 (1965). Although we are of the opinion that the evidence can support the verdict even without the improperly admitted evidence which we shall discuss with regard to the new trial motion, it is clear that that evidence can be considered on the motion for arrest of judgment.

The evidence here was ample to support the verdict. Two men were observed in the taxicab of the deceased. They were seen to struggle with the driver and flee from the cab. Appellant fit the general description of one of the criminals as to height, coloration, and clothing. Appellant was in the company of his alleged accomplice before and after the crime, and was wearing the clothes described by the eyewitness. A fellow prisoner in the Allegheny County Jail testified to Crews' admission that he was in the cab on the night of November 13, 1965. Surely, this evidence is sufficient to support a finding that appellant participated in an attack upon the driver. Appellant contends further, however, that there is no proof of the malice necessary to support a murder verdict. Yet it has long been the rule at common law and in Pennsylvania that a killing committed in the perpetration of a felony is murder. *Commonwealth v. Melton,* 406 Pa. 343, 178 A. 2d 728 (1962). The malice in the commission of the felony is imputed to the homicide. Under the Pennsylvania degree statute, Act of June 24, 1939, P. L. 872 §701, as amended, 18 P.S. §4701, the murder automatically rises to first degree if it happened to have been committed in the perpetration of arson, rape, robbery, burglary or kidnapping. The evidence in the instant case clearly

supports a verdict of guilty of first degree murder based upon a killing in the perpetration of a robbery. The testimony as to the cab driver's statement that "They tried to rob me" is admissible under the res gestae exception to the hearsay rule. *Commonwealth v. Rogozinski*, 387 Pa. 399, 128 A. 2d 28 (1956). Thus, the evidence amply supports the verdict, even without the testimony of Barbara Smith.

Barbara Smith was the girl friend of appellant, and apparently lived with him in a meretricious relationship. She at one time made a statement to the police, consisting of six typewritten pages, in question and answer form, and sworn to by her. In this statement she revealed that appellant had told her that he and Tedders were in the cab, that Tedders had drawn a knife, that he (Crews) had run, and that he believed Tedders had cut the driver's throat. Later, Mrs. Smith asserted that the statement had been coerced, and informed the District Attorney that she would not testify in accordance with it. At trial, the prosecutor notified the judge that he had a hostile witness but could not plead surprise, and requested the judge to call Mrs. Smith as the court's witness. The court called Mrs. Smith, and after asking if the signature under oath was hers, read her statement into the record, asking at the end of each answer whether the witness had so answered. Both the defense counsel and the district attorney were then permitted to cross-examine. The defense brought forth Mrs. Smith's allegation that the statement had been coerced, while the district attorney called one Esther Delts, who was permitted to testify that Barbara Smith had told her that defendant Crews had told Barbara Smith that Fred Tedders had cut the cab driver's throat.

We have no doubt that the above procedure was error necessitating a new trial. This case presents at least as strong a case for reversal as did the recent

case of *Commonwealth v. DiPasquale,* 424 Pa. 500, 230 A. 2d 449 (1967). The facts of that case are strikingly similar to those of the instant case. They are set forth in the opinion of Mr. Justice EAGEN at p. 502: "Billie Pierce, a girl friend of DiPasquale, was interrogated by the police during the investigation of the crime and gave them a recorded statement, wherein she stated, *inter alia,* that a few days following the occurrence DiPasquale had admitted in her presence that he and Amato had committed the crime involved. Later Miss Pierce was a witness at the hearing before the committing magistrate and testified under oath to substantially the same facts she related to the police. Later she was interviewed by a Mr. Sklar, an assistant district attorney who was preparing the case for trial, and reaffirmed the truth of her statement to the police. Her name was also listed as a witness on the bills of indictment. However, sometime before trial, Miss Pierce notified the district attorney through her attorney, that her statement to the police and her testimony before the committing magistrate concerning DiPasquale's alleged incriminating admissions were not true. As a result she was not called as a witness at trial by the Commonwealth.

"After the evidence was closed at trial and both sides had rested, the district attorney then requested that Miss Pierce be called as the court's own witness. The court complied with this request. She was examined about her association with DiPasquale, and in particular about anything she heard him say concerning the crime involved. When she failed to disclose and denied that DiPasquale had ever made any incriminating admissions as to the crime in her presence, she was strenuously cross-examined by the Commonwealth as to the contents of her statement to the police, her testimony before the magistrate and her interview with Mr. Sklar. What she said on these oc-

casions was disclosed to the jury and the patent inconsistencies thereof with her trial testimony was forcefully brought out. While she freely admitted telling the police, the magistrate and Mr. Sklar that she had heard DiPasquale make the incriminating statements involved, she steadfastly denied at trial she had ever heard DiPasquale make such statements, and stated her previous statements and testimony before the magistrate to the contrary were false."

The conviction in *DiPasquale* was reversed, for two reasons. The first was that the failure of the trial court properly to instruct the jury that the recanted statements could not be used as substantive evidence of guilt was prejudicial error. That ground is not available to appellant here, despite his protestations to the contrary. Appellant claims that the charge was inadequate in merely stating that "It would be correct that to the degree that she repudiated the statement that portion would cease to be what is termed substantive evidence." The objection is that substantive evidence is not defined. Read in context with the previous sentence of the charge—" 'Whatever she denied as being true or contradicted while she testified is not substantive evidence against the defendant nor can it be used to prove the charge against him.' "—the court's charge on this point was not erroneous.

The second basis for the holding in *DiPasquale* was that the court had abused its discretion in permitting the type of cross-examination of its witness, Miss Pierce, that took place. This court there said, 424 Pa. at 504: "As a general rule a trial judge may in the exercise of a sound discretion call and examine witnesses of his own accord. See Annot., 67 A.L.R. 2d 538, 540 (1959); 58 Am. Jur., Witnesses §4 (1948); 2 Wharton's Criminal Evidence §704 (12th ed. Anderson 1955); 42 Harv. L. Rev. 445 (1929). In fact under certain circumstances, it is necessary and imperative

for the court to do so. See Commonwealth v. Burns, 409 Pa. 619, 187 A. 2d 552 (1963). . . .

"However, in exercising this power, a wise discretion should be utilized, not only as to whether witnesses should be called by the court itself, but also as to the extent and manner of the examination permitted. While the trial court here may have been fully justified in calling Miss Pierce as its own witness, we believe that it failed to exercise a sound discretion in the extent and nature of the examination permitted.

"Evidence of Miss Pierce's prior inconsistent statements was pure hearsay. If she had been called as a Commonwealth's witness, evidence thereof could not properly have been introduced under the circumstances presented. However, since she was not such a witness, the Commonwealth, under the guise of impeaching her credibility, was permitted to bring to the knowledge of the jury through the back door that which it was precluded from bringing in through the front door; namely, the damaging contents of her prior inconsistent statements.* The rule permitting trial courts to summon and examine witnesses on its own accord does not envision that the power shall be exercised to accomplish such a result."

The prior inconsistent statements of Barbara Smith in the instant case made a similar back door entry. In fact, the situation here was considerably more prejudicial to the defendant than that in *DiPasquale*. For in *DiPasquale*, the judge merely questioned the witness, and the prior inconsistent statements were introduced by the Commonwealth on cross-examination. Here, the Commonwealth was improperly allowed to use the prior inconsistent statements to impeach through

---

* "Such procedure was severely condemned by this Court, speaking by Chief Justice JONES, in Commonwealth v. Turner, 389 Pa. 239, 248-253, 133 A. 2d 187 (1957)." (Footnote in original)

the witness Esther Delts. But what was much worse was that the judge himself read the prior inconsistent statements to the jury, and the jury could not have helped but view this as the statements receiving the judge's imprimatur. If cross-examination as to the statements is bad in *DiPasquale,* a fortiori, the judge's reading the statements to the jury is error.

Judgment reversed, and new trial ordered.

Mr. Justice ROBERTS concurs in the result.

Mr. Chief Justice BELL and Mr. Justice MUSMANNO dissent.