## PATTERSON *v.* STATE OF MARYLAND

[No. 179, September Term, 1974.]

*Decided July 23, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Gilbert Kramer* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Clarence W. Sharp, Assistant Attorney General, Edwin H. W. Harlan, State's Attorney for Harford County, John A. Goodman* and *Edward Lilly, Assistant State's Attorneys for Harford County,* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

Following a domestic argument, Douglas Lynn Patterson died on the night of Sunday, June 25, 1972, as a result of internal bleeding caused by a stab wound in his chest. His wife, the appellant, Mary Theresa Patterson, was indicted for his murder.

Following a five-day jury trial in the Circuit Court for

Harford County (presided over by Judge Albert P. Close) she was convicted on February 17, 1973, of murder in the second degree and thereafter sentenced to a term of 20 years.[1]

On the morning of the trial the prosecutor filed a motion for appropriate relief under Maryland Rule 725 a asking that the trial court call Mrs. Edna Gentile as the court's own witness for the purpose of direct examination by the court and with cross-examination to be allowed both the State and the defense.

As reasons for the relief requested the motion alleged that the witness possessed material and relevant knowledge of the circumstances surrounding the homicide and the actions and words of the decedent immediately prior to the stabbing, that the State could not vouch for the veracity of the witness and that a miscarriage of justice would result from the failure of the witness to testify. Following the impaneling of the jury, the prosecutor, in chambers, in support of his motion, proffered that although Mrs. Gentile had been summoned as a State's witness the prosecution could not vouch for her veracity because she had made inconsistent statements, plus the fact that she was the mother of the appellant; that she had refused to speak with the prosecutor about the case; that on the night of the homicide she had given an oral statement to State Police officers, only after having spoken with her husband and after she had urged him "don't tell the police anything;" that the oral statement varied materially with the sworn testimony she had given the Grand Jury and varied as well materially with the statement given her daughter's counsel, and that because of the blood relationship with the accused it was believed that she would not be candid in her testimony. It was additionally proffered that at the time of the homicide Mrs. Gentile had been the only person present in the Patterson home, other than the three-year-old child of the parties, and that the personal knowledge she possessed

1. Upon a review of her sentence by a three-judge panel pursuant to Maryland Code (1957, 1973 Repl. Vol.) Art. 26, §§ 132-38 (now codified as Code (1957, 1971 Repl. Vol. [1974 Cum. Supp.]) Art. 27, §§ 645JA-645JG) and Maryland Rule 762 her sentence was reduced to a term of 15 years.

made her testimony necessary for a fair determination of the appellant's guilt or innocence. Appellant's counsel objected to the motion and countered by moving to suppress the oral statements given by Mrs. Gentile which might be used by the State in presenting its case-in-chief, or by the court in examining her, should the motion be granted.[2]

In order to protect the witness against any possible charge of perjury Judge Close appointed counsel to represent her and, out of the presence of the jury, received evidence in support of the State's motion.

In those proceedings two Maryland State Troopers testified that when they visited the Patterson home Mrs. Gentile, who was described as "upset," remained in a bedroom until her husband came to the premises, that although she exhorted her husband not to tell the police anything he counseled her that the police were "only doing their job" and that "if she knew anything [about the homicide] to tell them." Mrs. Gentile then told the police that Douglas Patterson and her daughter had planned "to go out for the evening;" that she was scheduled to "baby sit;" that after Mrs. Patterson had gotten dressed she heard the victim express his change of mind and saw her daughter enter a small bedroom, used as a television room, where her son-in-law was seated in a chair; that when he repeated his refusal to "take his wife out" her daughter began waving a knife in front of him. Subsequently she saw Douglas Patterson rise from the chair with blood on the front of his clothing and stagger into the kitchen where he collapsed. Because she was "upset" she refused to give the police a written statement that evening; an appointment was made for her to be interviewed at the police barracks the following day. She later refused to give a statement out of the presence of her attorney and her account of the incident was never reduced to writing.

It was further elicited that when Mrs. Gentile testified under oath before the Grand Jury she stated that the

---

2. The trial court denied the appellant's motion to suppress Mrs. Gentile's oral statements to the police.

argument had commenced in the television room and continued in the kitchen; that she was never present in the same room where the parties were arguing. She further gave testimony that the first time she had ever seen the knife was, following the stabbing, when the trooper removed it from the kitchen sink; she denied that she had ever seen her daughter brandishing the knife and stated that during the argument her son-in-law had left the television room and that when she next saw him he was lying wounded on the kitchen floor.

It was additionally pointed out that a statement she had subsequently given the appellant's trial counsel differed substantially from what she had orally related to the police on the night of the killing.[3]

Judge Close after hearing argument on that, as well as on other motions, granted the State's motion to have Edna Gentile called "as the court's witness" and before the State closed its case-in-chief she, over defense objection, was called as the last witness, with the court questioning her initially and both the State and the defense cross-examining her.

In her direct appeal to the Court of Special Appeals the appellant asserted *inter alia* that the trial court abused its discretion in granting the State's motion and in having Edna Gentile testify as the court's own witness during the presentation of the State's case-in-chief. That court, in affirming her conviction in *Patterson v. State*, 22 Md. App. 13, 321 A. 2d 544 (1974), held that "there was an adequate showing of the need to do so and that in calling her [as the court's witness] the court did not abuse its discretion." We granted certiorari limited solely to the question whether the trial court abused its discretion by granting the State's motion for appropriate relief and in calling Edna Gentile as its own witness during the State's case-in-chief.

---

**3.** It appears that the statement she gave to appellant's trial counsel was substantially the same as the sworn testimony she gave before the Grand Jury. No reference to that statement was made by the trial court in its ruling and the statement was offered as an exhibit during the cross-examination of the witness when she testified before the jury.

Although in *Hewitt v. Md. Board of Censors*, 241 Md. 283, 291, 216 A. 2d 557, 561 (1966), this Court rejected the procedure where the trial judge mobilized, on his own initiative, the entire jury panel as a pool of witnesses to review a motion picture and to answer a questionnaire concerning whether or not it was "obscene," and stated: "The trial judge ordinarily should wait for the party on whom the burden of proof rests to procure, produce and examine in open court, the witnesses he hopes will prove his case," and although in *Wilson v. State*, 20 Md. App. 318, 321, 315 A. 2d 788, 790 (1974), where the trial court had granted the State's motion that three young men, eyewitnesses to the shooting, be called as the court's own witnesses on the ground that they had been intimidated, were "terrified" and that the State could not vouch for their veracity, the authority of the trial judge to call and examine the witnesses was not there at issue, no prior appellate decision in this state has ruled on whether a trial judge may, in the exercise of his sound discretion, call and examine witnesses under appropriate circumstances.

In all jurisdictions, however, in which the question has been considered the authority of the trial court to call a witness in a criminal prosecution as the court's witness on its own motion, or at the request of one of the parties has been recognized.[4] In those cases where neither the prosecution nor the defense is willing to vouch for the veracity of the witness and the witness appears to possess

---

4. Jurisdictions recognizing the rule include: United States: *Young v. United States*, 107 F. 2d 490 (5th Cir. 1939); *United States v. Lutwak*, 195 F. 2d 748 (7th Cir. 1952), *aff'd*, 344 U. S. 604 (1953); Alabama: *Kissic v. State*, 266 Ala. 71, 94 So. 2d 202 (1957); Arizona: *State v. Guthrie*, 108 Ariz. 280, 496 P. 2d 580 (1972); Arkansas: *Parker v. State*, 252 Ark. 1242, 482 S.W.2d 822 (1972); California: *People v. Sears*, 62 Cal. 2d 737, 401 P. 2d 938, 44 Cal. Rptr. 330 (1965); Florida: *Daugherty v. State*, 154 Fla. 308, 17 So. 2d.290 (1944); Illinois: *People v. Williams*, 22 Ill. 2d 498, 177 N.E.2d 100 (1961), *cert. denied*, 369 U. S. 806 (1962); Louisiana: *State v. Graffam*, 202 La. 869, 13 So. 2d 249 (1943) (by implication); Minnesota: *State v. Hines*, 270 Minn. 30, 133 N.W.2d 371 (1964); New Mexico: *Portales v. Bell*, 72 N. M. 80, 380 P. 2d 826 (1963); North Carolina: *State v. Horne*, 171 N. C. 787, 88 S. E. 433 (1916); Pennsylvania: *Commonwealth v. Crews*, 429 Pa. 16, 239 A. 2d 350 (1968); Tennessee: *Montesi v. State*, 220 Tenn. 354, 417 S.W.2d 554 (1967); Texas: *Pugh v. State*, 69 Tex. Crim. 357, 151 S. W. 546 (1912); Virginia: *Pendleton v. Commonwealth*, 131 Va. 676, 109 S. E. 201 (1921); West Virginia: *State v. Loveless*, 142 W. Va. 809, 98 S.E.2d 773 (1957).

material evidence the invocation of the procedure is generally held to be within the sound discretion of the trial court; some courts limit the procedure to those cases where material injustice would otherwise result. *See* Annot., 67 A.L.R.2d 538, 540-42 (1959).

A succinct summary of the rule is stated in 98 C.J.S. *Witnesses* § 350, at 70-71 (1957), as follows:

> "This power of the court to call witnesses and allow cross-examination by either or both sides extends to criminal cases. This does not mean that every witness may be so called, or that cross-examination may include everything that may affect credibility. The calling of a witness as the court's witness in a criminal case, either for or against accused, is a matter resting in the sound discretion of the court. The court's discretion should be exercised with great care; and some showing should be made to the court, in the absence of the jury, to justify the court in calling witnesses as its own. Ordinarily, the court should call a witness as its own only when it is shown that otherwise there might be a miscarriage of justice. The court may call a witness whose veracity and integrity will not be vouched for by the prosecution or accused, or a witness who is hostile to the party calling him. The power of the court to call witnesses may be exercised with respect to witnesses present at the commission of the crime. . . ."

*In accord* 2 C. Torcia, Wharton's Criminal Evidence § 503 (13th ed. 1972); C. McCormick, *Evidence* § 8 (2d ed. 1972); and 58 Am. Jur. *Witnesses* § 4 (1948). *See also* 9 J. Wigmore, *Evidence* § 2484 (3d ed. 1940).

The new Federal Rules of Evidence expressly recognize the right of a court, on its own motion, or at the suggestion of a party, to call witnesses, with all parties entitled to cross-examine the witnesses thus called. Rules of Evidence for United States Courts and Magistrates, Rule 614 (a). In a commentary to the Rule it is stated as being in accord "with

usual practice and the common law tradition in recognizing the trial judge's right to call and question witnesses in both civil and criminal cases." 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 614[01], at 614-3 (1975).

The appellant conceding generally the validity of the right of the court to call as its own witness one whose integrity or veracity cannot be vouched for by the party calling him, nonetheless contends that the trial court abused its discretion in that the evidence educed was insufficient to justify the court's invocation of the procedure, and that the court exercised its discretion carelessly when Edna Gentile testified before the State closed its case since this affected the burden of proof, diminished the trial judge's role as an impartial arbiter and, in the eyes of the jury, conveyed the impression that the trial judge, by assuming the role of prosecutor, was helping to prove the State's case.

It seems clear that upon the facts presented in the proceedings below the procedure invoked by the trial court was premised upon the "voucher" rule which requires a party to vouch for the credibility and veracity of the witnesses he produces. In *Proctor Elec. Co. v. Zink*, 217 Md. 22, 32, 141 A. 2d 721, 726 (1958), Judge Prescott (later Chief Judge) stated for this Court: "It is unquestionably the general rule that a person who produces a witness vouches for him as being worthy of credit, and no direct attack upon his veracity should be made by the party who produces him in the absence of surprise, hostility or deceit. *Murphy v. State*, 120 Md. 229 [87 A. 811 (1913)], 3 Jones, *Evidence Civil Cases*, (4th Ed.) secs. 853, 854." *See also Stehle Equip. Co. v. Alpha Const. & Dev. Co.*, 247 Md. 210, 214, 230 A. 2d 654, 656 (1967).

In *State, use of Chenoweth v. Balto. Contracting Co.*, 177 Md. 1, 6 A. 2d 625 (1939), the appellants contended that they had the right to impeach their own witnesses by cross-examining them as to other statements, made at other places and at other times, in conflict with their testimony and by offering proof of such contradicting statements. In rejecting that contention Judge Offutt who delivered the opinion for the Court stated the rule well when he said:

"The rule in this state, applicable to such cases, is that a party will not be allowed to impeach his own witness by proof of contradictory statements made on other occasions, nor will he be permitted to cross examine such witness as to any such statement, unless he has been enticed or entrapped into calling him by statements, made to the party or his attorney by the witness, which were inconsistent with his testimony in the particular case in which he is being examined. Upon proof that he has been so surprised or entrapped, the party calling the witness may, to explain why he called him, not only cross examine him as to prior contradictory statements, but offer proof thereof. Such proof however is not substantive evidence and its only effect is to impeach the credibility of the witness. In the absence of any proof of surprise or entrapment, the party calling the witness may not offer proof of prior conflicting statements, but he may by any competent witness prove facts however inconsistent with those to which the witness under examination testified, although a collateral incident of such proof is to impeach the witness. [Citing cases.] To warrant the application of that rule it is not enough that the treacherous or deceitful statements have been made, but they must have been made to the party calling the witness or to his attorney, or to some person to be communicated to them. 70 *C. J.* 1032, *Murphy v. State,* 120 Md. 229, 87 A. 811, *Ann. Cas.* 1914B, 1117, 1133. The reason for the rule is the protection of a party who has been entrapped into calling a treacherous witness who has, by statements made prior to the trial to the party or his attorney, induced the party calling him to reasonably believe that his testimony would be favorable to his contention. 70 C. J. *"Witnesses"* secs. 1227-1229. The wrong at which the rule strikes is the introduction of a hostile witness under the reasonable and well founded belief that he is

friendly, and that his evidence will be favorable to the party calling him, when that belief is induced by statements of the witness to the party calling him, to his attorney or to some other person with instructions to communicate the statements to them or either of them." 177 Md. at 15-16, 6 A. 2d at 632.

This evidentiary principle has been equally applied in both criminal and civil cases. *See Duffy v. State,* 243 Md. 425, 433, 221 A. 2d 653, 657 (1966); *Green v. State,* 243 Md. 154, 157, 220 A. 2d 544, 546 (1966); *Green v. State,* 243 Md. 75, 80, 220 A. 2d 131, 134 (1966); *Sellman v. State,* 232 Md. 344, 348, 192 A. 2d 788, 790 (1963); *Bruce v. State,* 218 Md. 87, 94-95, 145 A. 2d 428, 431-32 (1958); *Murphy v. State, supra; Rinard v. Nationwide Mut. Ins. Co.,* 269 Md. 1, 6, 304 A. 2d 252, 255 (1973); *Stehle Equip. Co. v. Alpha Const. & Dev. Co., supra; State, use of Chenoweth v. Balto. Contracting Co., supra.*

Although a party cannot impeach its own witness, it is not absolutely bound by that witness's testimony. *Duffy v. State, supra; Green v. State, supra* (243 Md. 75, 220 A. 2d 131). Such a party is not incidentally precluded from discrediting such a witness and may prove the truth of material facts, or that the witness is mistaken, by other evidence oral or written and the resultant conflict then becomes a question for the jury to decide. *Rinard v. Nationwide Mut. Ins. Co., supra; Tie Bar, Inc. v. Shartzer,* 249 Md. 711, 714-15, 241 A. 2d 582, 584 (1968).

In arguing that the State should have been permitted to call Mrs. Gentile as its own witness and then used the "traditional options to impeach her" the appellant overlooks the holdings in *State, use of Chenoweth v. Balto. Contracting Co., supra,* and in *Green v. State, supra,* (243 Md. 154, 220 A. 2d 544), since the State, well aware of the conflict between her accounts of the incident, could certainly not satisfy the trial court that it had "been taken by surprise" and since any such inconsistent statements used for impeachment purposes would have been admissible only to show why the witness had been called by the prosecution

and could not be received as having any substantive or independent testimonial value.

In a number of reported cases, on facts substantially similar to those presented to Judge Close, it has been held that there was no error on the part of the trial court in making such a witness the "court's witness." In *People v. Banks*, 7 Ill. 2d 119, 128-29, 129 N.E.2d 759, 764 (1955), *cert. denied*, 351 U. S. 915 (1956), it was held that the trial court had properly made the fiancée of the defendant, who was an eyewitness to the homicide with which he was charged, a court witness, where she had given inconsistent statements to the police and to the defendant's lawyer concerning a gun, and the prosecutor expressed doubt as to her veracity and integrity as a witness, the court observing: "Mrs. Williams witnessed the shooting of Dudley by the defendant. There was ample cause for the State's Attorney to doubt her veracity and integrity. Yet without her testimony there was a definite likelihood of miscarriage of justice."

In *People v. Hinderhan*, 405 Ill. 435, 438, 91 N.E.2d 430, 432 (1950), where the defendant was charged with taking indecent liberties with his minor child it was held that the trial court did not abuse its discretion in calling his wife as a court witness where she had been at the scene of the crime shortly after the act had been committed, had made a written statement concerning the facts and later changed her position and made statements at variance with those formerly given which made the prosecutor unwilling to vouch for her credibility. In *People v. Peterson*, 364 Ill. 80, 89, 4 N.E.2d 37, 41 (1936), in a manslaughter prosecution a companion of the defendant, who was an eyewitness to the incident and who had given contradictory and inconsistent testimony at the coroner's inquest, was called as a court witness when the prosecutor stated that he could not vouch for the witness's credibility. In *People v. Daniels*, 354 Ill. 600, 605, 188 N. E. 886, 888-89 (1933), the witness undertook to offer testimony, to the surprise of the prosecutor, different from that given by him before the Grand Jury as well as at a preliminary hearing and the recall of the witness as a "court witness" was held not to be prejudicial error. In *People v.*

*Dascola,* 322 Ill. 473, 486, 153 N. E. 710, 715 (1926), it was held not to be error when the trial court called as its witness the daughter of the two defendants (husband and wife) on trial for homicide, who had been an eyewitness to the shooting, the court stating: "Where the State's attorney knows that a witness was present at the scene of a killing, but for some reason, either because he has no confidence in the witness or for some other good reason, he may doubt the veracity or integrity of the witness, he is not obliged to call such witness but the court may call him and leave him open for cross-examination by either side." *In People v. Limeberry,* 298 Ill. 355, 371, 131 N. E. 691, 698 (1921), it was held not to be error in calling as a court witness the 11-year-old son of the defendant charged with murder who was an eyewitness to an incident between his father and the deceased on the night previous to the shooting.

*See also People v. Gordon,* 116 Ill.App.2d 260, 267-68, 252 N.E.2d 562, 566 (1969), where the wife of the defendant charged with the homicide of his two-year-old son was made a court witness where the wife was the only eyewitness to the crime, had expressed her hostility to the prosecution, and the State's Attorney filed an affidavit setting forth facts upon which he was unable to vouch for her integrity as a witness; *People v. Routt,* 100 Ill.App.2d 388, 393, 241 N.E.2d 206, 208-09 (1968), where it was held not to be an abuse of discretion in a murder trial to call as a court witness the woman with whom the defendant lived whose testimony was material and relevant and who prior to trial had demonstrated a sympathy for the defendant and a hostility toward the prosecution.

Similarly, in *Kissic v. State,* 266 Ala. 71, 73-75, 94 So. 2d 202, 204-06 (1957), the Supreme Court of Alabama held that there was no abuse of discretion in granting the prosecution's motion that the court call as its own witness, prior to the close of the State's case-in-chief, the sister of the defendant who was the ex-wife of the deceased where her brother was charged as a principal in the stabbing death of his former brother-in-law. In that case the prosecutor represented to the court that the witness was present at the

homicide, that she had given a statement under oath the night the homicide happened, but had in the trial of a co-defendant given contrary testimony. In sustaining the action taken, that court cautioned however that "[t]he court's action and questions should be such at all times to preserve the judicial attitude of strict impartiality."

*In accord* are the holdings in *Daugherty v. State*, 154 Fla. 308, 17 So. 2d 290 (1944), where the brother of the defendant had given testimony before the Grand Jury and in a habeas corpus proceeding prior to trial which supported the State's contentions but who subsequently had made inconsistent statements, and in *Olive v. State*, 131 Fla. 548, 179 So. 811 (1938), where the prosecution refused to vouch for the credibility of one who was an eyewitness to the shooting because of conflicting statements he had made and because he was "a very close associate of the defendant."

In a great number of the cases in which the procedure has been approved the person who was made the court's witness was an eyewitness to the incident but the power of the court in such cases is not limited to the calling of those who were eyewitnesses. *People v. Siciliano*, 4 Ill. 2d 581, 590, 123 N.E.2d 725, 730 (1955); *People v. Gibson*, 385 Ill. 371, 381, 52 N.E.2d 1008, 1013 (1944); *People v. Touhy*, 361 Ill. 332, 349-50, 197 N. E. 849, 858 (1935).

Although the procedure has been most frequently invoked in those cases where a party will not vouch for the veracity and integrity of a witness, the discretionary right vested in a trial court to call a person as the court's witness is clearly not limited to such circumstances.

The Supreme Court of Pennsylvania in *Commonwealth v. Crews*, 429 Pa. 16, 239 A. 2d 350 (1968) stated the general rule as follows:

> " 'As a general rule a trial judge may in the exercise of a sound discretion call and examine witnesses of his own accord. See Annot., 67 A.L.R.2d 538, 540 (1959); 58 Am. Jur., Witnesses § 4 (1948); 2 Wharton's Criminal Evidence § 704 (12th ed. Anderson 1955); 42 Harv.L.Rev. 445 (1929). In fact

under certain circumstances, it is necessary and imperative for the court to do so. See Commonwealth v. Burns, 409 Pa. 619, 187 A.2d 552 (1963). [a case where the witness's name was endorsed on the indictment but was not called by either side] . . . .' " 429 Pa. at 22-23, 239 A. 2d at 353.

In *Young v. United States,* 107 F. 2d 490, 494 (5th Cir. 1939) that court stated the rule in this fashion:

"It is proper in the trial of a serious crime, . . . that the government present in Court the eye witnesses, that in the event they are not used by the prosecution they may be available to the accused or the Court. If some are not desired to be used by the prosecution, attention of Court and jury can be called to their presence and availability so as to rebut the criticism that truth may have been suppressed. It is not at all necessary to move the Court to introduce them as witnesses; accessibility to the accused, that he may interview and use them if he wishes, is enough. If he declines, then the right of the Court to call them arises, to be exercised according to his own discretion in aid of truth and justice and not on motion of either side."

The Supreme Court of Minnesota in *State v. Hines,* 270 Minn. 30, 133 N.W.2d 371 (1964) in holding that there had been no abuse of the trial court's discretion in failing to call a witness on its own initiative, nonetheless recognized the general rule when it stated:

"As defendant points out, there is authority for the proposition that the trial judge has discretionary power not only to examine but to call witnesses. In McCormick, Evidence, § 8, it is asserted:

'Under the Anglo-American trial system, the parties and their counsel have the primary responsibility for finding, selecting and

presenting the evidence. * * * Nevertheless, our system of party-presentation is not exclusive or all-sufficient. It is but a means to the end of disclosing truth and administering justice, and for reaching this end the judge has the over-all responsibility. When the party-presentation is incomplete and fails to elicit some material fact the judge not only may, but seemingly owes a duty to supply the omission by further examination.

\* \* \*

'Not only may the judge examine witnesses called by the parties, he may also, for the same purpose of bringing out material facts that might not otherwise be elicited, call witnesses himself whom the parties might not have chosen to call. * * * He may then invoke the court's discretion to call the witness, in which event either party may cross-examine and impeach him.' " 270 Minn. at 40-41, 133 N.W.2d at 378.

In accord with these views are the holdings in *United States v. Brandt,* 196 F. 2d 653 (2d Cir. 1952); *Pendleton v. Commonwealth,* 131 Va. 676, 109 S. E. 201 (1921); *Anderson v. State,* 35 Ala. App. 111, 44 So. 2d 266 (1950) and *People v. Routt, supra.*

The majority view appears to be that since, under the Anglo-American trial system, the parties themselves have the primary responsibility of producing evidence, a trial judge should call a witness as a "court witness" only when the adversary system fails to produce the necessary facts and a miscarriage of justice would likely result. *See* Note, *The Power of a Trial Judge to Call a Witness,* 21 S.C. L.Rev. 224, 225 (1969), citing 9 J. Wigmore, Evidence §§ 2483-84 (3d ed. 1940).

We agree with the contention of the appellant that the procedure cannot be invoked merely because the prosecutor had "every reason to believe that [the witness] was present

at the transaction and that he had refused to talk to the State's Attorney about his answers to certain questions." (*See People v. Bennett,* 413 Ill. 601, 110 N.E.2d 175 (1953); *compare Pendleton v. Commonwealth, supra.*) The facts, however, submitted in the lower court in support of the State's motion went far beyond such a basic premise.

The evidence submitted to Judge Close established that other than the appellant, Mrs. Gentile was the only witness present in the Patterson household at the time of the homicide; she thus possessed relevant and material information concerning the circumstances surrounding the crime. The fact that she had given an oral statement to the investigating policemen on the evening of the incident, when the matters were fresh in her mind and within easy recall, which varied materially with the testimony she subsequently gave to the Grand Jury, superimposed as it was upon the filial relationship of the appellant with her, fully justified the lack of confidence of the prosecutor in the credibility of the witness. Without her testimony there was the strong likelihood that there would be a miscarriage of justice. The totality of this evidence presented a sufficient basis for the ruling made by the trial court in permitting the witness to be examined directly by the court with cross-examination by both the prosecution and the defense. We concur with the holding of the Court of Special Appeals that the discretion vested in the trial court to call her as its witness was not abused.

In connection with the eliciting of evidence by a trial court, Judge Learned Hand stated in *United States v. Marzano,* 149 F. 2d 923, 925 (2d Cir. 1945): "A judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty which he cannot discharge by remaining inert."

When however the trial court does permit the procedure whereby a witness becomes the court's "own witness" the judge must be scrupulously careful to preserve an attitude of impartiality and should never give the jury the impression he is of the opinion that the defendant is guilty. *Gomila v. United States,* 146 F. 2d 372 (5th Cir. 1944); *Kissic*

*v. State, supra; People v. Moriarity,* 33 Ill. 2d 606, 213 N.E.2d 516 (1966); *People v. Schaeffer,* 353 Ill. 509, 187 N. E. 452 (1933); *Commonwealth v. Crews, supra; State v. Loveless,* 142 W. Va. 809, 98 S.E.2d 773 (1957).

In *Gomila* the U. S. Court of Appeals for the Fifth Circuit stated:

> "In aid of truth and in furtherance of justice, the court may question a witness, — in fact, he may call and question a witness not used by either party,[2] [*Young v. United States,* 107 F.2d 490, 493 (5th Cir. 1939)] — but in so doing the court should be careful to preserve an attitude of impartiality and guard against giving the jury any impression that the court was of the opinion that defendant was guilty. The opinion of the judge, on account of his position and the respect and confidence reposed in him and in his learning and assumed impartiality, is likely to have great weight with the jury, and such fact of necessity requires impartial conduct on his part." 146 F. 2d at 374.

In *Dresbach v. State,* 228 Md. 451, 453, 180 A. 2d 299, 300 (1962), this Court in passing upon the alleged impropriety of a remark made by the trial court stated:

> "It is undoubtedly true that a trial judge because of his authoritative position should be exceedingly careful in any remarks made by him during the progress of the trial in ruling on evidence or prayers, to refrain either directly or indirectly from expressing an opinion on facts which should properly be left to the province of the jury. *Marino v. State,* 171 Md. 104, 110, 187 Atl. 858 [, 861 (1936)]."

*See also State Roads Comm. v. Wyvill,* 244 Md. 163, 170, 223 A. 2d 146, 149 (1966); *Western Md. Dairy Corp. v. Brown,* 169 Md. 257, 268, 181 A. 468, 474 (1935).

The State's motion to have Mrs. Gentile called as the court's witness was made, in open court, only after the jury

had been excused for its luncheon recess. There was no intimation to the jury that the State would not vouch for her credibility or that she was being made the court's witness. Her direct examination by Judge Close began, following the recess, before the jury. Our examination of the transcript convinces us that Judge Close was "scrupulously careful to preserve an attitude of impartiality." *See Madison v. State*, 200 Md. 1, 12, 87 A. 2d 593, 598 (1952). *Compare People v. Moriarity, supra,* where the convictions were reversed because the trial judge was held to have abandoned his role as an impartial arbiter.

Judge Close's interrogation of the witness was limited to fact-eliciting questions. There was no suggestion of unfairness or impartiality contained in any of them; nor from any of them was there any semblance of an opinion concerning the appellant's guilt or innocence. Indeed, neither counsel made any objections to the court's questions. Following the trial court's examination Mrs. Gentile was cross-examined by the prosecutor concerning the testimony she had given to the Grand Jury, the statement she had given the police and statements she had given to relatives of Douglas Patterson; she was then cross-examined by appellant's counsel concerning the pre-trial statement she had given him. Her Grand Jury testimony as well as the statement given counsel were received into evidence as court exhibits. Her testimony as well as the statements she had given were thus all before the jury for its consideration and it was for the jury to resolve any conflicts.

The power vested in the trial court to thus examine a witness does not violate the allocation of the burden of proof because "the general judicial power itself expressly allotted in every state constitution implies inherently a power to investigate as auxiliary to the power to decide; and the power to investigate implies necessarily a power to [both] summon and to question witnesses." 9 J. Wigmore, Evidence § 2484 at 267 and n. 1, at 268-69 (3d ed. 1940).

Judge Close never assumed the role of prosecutor or of an advocate — he limited his role in examining the witness to the elicitation of facts. When the court does make a person

the court's witness, particularly where done in order to circumvent the rule against impeachment of one's own witness, the trial judge's power is said to be used to improve the efficiency of the adversary system. *See* Comment, 51 N.W.U.L.Rev. 761, 770 (1957).

In arguing that the trial court's discretion was "exercised carelessly" the appellant contends that the proper procedure would have been to have called Mrs. Gentile after the State had rested, "in order to preserve the impartiality of the trial court in the eyes of the jury." No precedent, however, in support of this thesis is provided.

The impartiality of the trial court was not forsaken. Mrs. Gentile possessed relevant and material information concerning the homicide; not to have called her before the State closed its case-in-chief may have resulted in the granting of a motion for judgment of acquittal under Maryland Rule 755 b and a possible resultant miscarriage of justice. Assuming, however, that without the evidence elicited through her, the prosecution may have cleared that hurdle, it seems to us that to have called Mrs. Gentile after the State had rested its case and after the appellant testified may have tended to unfairly emphasize the conflicts in the evidence given by her daughter and that elicited through her examination. Under the circumstances of the case, since the witness possessed first-hand knowledge of the homicide it appears to us that the procedure followed by the trial court was judicially most fair. Additionally, we point out that in each of the cited cases involving similar circumstances the testimony of such a witness as the "court's witness" was given before the close of the prosecution's case. *See, e.g., Kissic v. State, supra.* We do not agree with the appellant's contention that the procedure of calling Mrs. Gentile as the last witness before the prosecution rested its case was an abuse of the trial court's discretion.

Lastly, the appellant argues that it was error for the trial court not to have specifically instructed the jury concerning the unusual procedure which was invoked. Although this issue was not included within the scope of the question

concerning which we granted certiorari, we point out further that no request for any such instruction was made by appellant's trial counsel; hence, this point is not properly before the Court for review. Maryland Rule 756 g, *Dimery v. State*, 274 Md. 661, 338 A. 2d 56 (1975); *Gladden v. State*, 273 Md. 383, 330 A. 2d 176 (1974).

For the reasons assigned, the judgment of the Court of Special Appeals is affirmed.

*Judgment affirmed, appellant to pay costs.*